UNITED STATES of America, EX REL., Lisa ARANDA and Gayle DeWitt, Plaintiffs,

v.

COMMUNITY PSYCHIATRIC CENTERS OF OKLAHOMA, INC. d/b/a CPC Southwind Hospital, Defendant.

No. CIV–94–608–A.

United States District Court, W.D. Oklahoma.

Oct. 1, 1996.

Robert A. Bradford, U.S. Attorney's Office, Oklahoma City, OK, Larry A. Tawwater, Loren F. Gibson, George J. McCaffrey, McCaffrey & Tawwater, Oklahoma City, OK, Ronald H. Clark, Michael F. Hertz, Scott S. Dahl, Daniel R. Anderson, U.S. Department of Justice, Commercial Litigation, Civil Division, Washington, DC, for U.S.

Larry A. Tawwater, Loren F. Gibson, George J. McCaffrey, McCaffrey & Tawwater, Oklahoma City, OK, for Lisa Aranda, Gayle DeWitt.

Richard A. Mildren, Robert A. Nance, Michael C. Turpen, Riggs Abney Neal & Turpen, Oklahoma City, OK, Eugene Tillman, Reed Smith Shaw & McClay, Washington, DC, for Community Psychiatric Centers of Oklahoma Inc.

## *ORDER*

ALLEY, District Judge.

Before the Court is Defendant's Motion to Dismiss Second Amended Complaint, filed August 5, 1996. Plaintiff United States has responded in opposition to the motion, and defendant Community Psychiatric Centers of Oklahoma, Inc. ("CPC") has replied. Based on these submissions, the government's second amended complaint, and the relevant law, the Court rules as follows.

### *GOVERNING LEGAL STANDARDS*

The claims asserted in the government's second amended complaint, like the first amended complaint, are a statutory claim under the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1), and common law claims under theories of unjust enrichment and payment by mistake of fact.[1] CPC's motion chal-

---

1. The first amended complaint also included claims under 31 U.S.C. § 3729(a)(2) that have

lenges whether the second amended complaint is legally sufficient to state a claim for relief. CPC invokes only Rule 12(b)(6), Fed. R.Civ.P., and does not renew its previous motion challenging whether the government's allegations were sufficiently particular to satisfy Rule 9(b).

The standard governing a motion to dismiss under Rule 12(b)(6) is well established. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir.1994). All well-pleaded factual allegations of the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Coosewoon*, 25 F.3d at 924. Under this liberal standard, the Court finds the government's second amended complaint to be sufficient to state actionable claims.

As an initial matter, the Court rejects CPC's effort to defeat the second amended complaint by making factual allegations. CPC accuses the government of raising mere regulatory compliance issues and of "second-guessing ... the government's own expert survey teams which conducted surveys in 1993 and 1994 and certified that [CPC] was in compliance with applicable regulations." (Def.'s Br. at 17.) CPC contends, in essence, that it could submit claims to the Medicaid program with impunity based on these certifications that it was eligible to participate in the program.

■ A Rule 12(b)(6) motion tests the legal sufficiency of a pleading and, unless converted to a motion for summary judgment, must be decided on the pleadings alone. Matters outside the government's pleading will not be considered by the Court in ruling on CPC's motion for dismissal. CPC may raise these matters in defense of the second amended complaint.

been omitted from the second amended com-

*ANALYSIS OF THE GOVERNMENT'S FCA CLAIM*

■ Section 3729(a)(1) of the FCA imposes liability on:

Any person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval....

31 U.S.C. § 3729(a)(1). The essential elements of a claim under this provision are: (1) submission of a claim for payment to the federal government; (2) falsity or fraudulence of the claim; and (3) "knowing" action, which means acting either with actual knowledge of information or in deliberate ignorance or reckless disregard of the truth or falsity of information. *Fleming v. United States*, 336 F.2d 475, 480 (10th Cir.1964); 31 U.S.C. § 3729(b) ("no proof of specific intent to defraud is required").

■ The government claims CPC violated section 3729(a)(1) "in relation to [CPC's] treatment of patients and billing for services at its psychiatric facility known as CPC Southwind Hospital". (Second Am.Compl. at 1, ¶ 1.) Specifically, the government accuses CPC of "knowingly failing to provide the government insured patients with a reasonably safe environment." (Second Am.Compl. at 8, ¶ 35.) This amounted to an FCA violation, under the government's theory, because (1) CPC submitted bills to the federal government for in-patient psychiatric care of Medicaid patients, (2) by submitting the bills, CPC "implicitly certif[ied] that it was abiding by applicable statutes, rules and regulations" requiring provision to patients of "appropriate quality of care and a safe and secure environment", and (3) CPC "knew that it was not providing to its patients appropriate quality of care and a safe and secure environment...." (Second Am.Compl. at 20–21, ¶¶ 101–02.)

The second amended complaint identifies numerous alleged problems with CPC's psychiatric treatment program. Patients admitted to CPC have initial treatment plans that

plaint.

identify as primary objectives, often, that the patients be provided a safe environment and, sometimes, that suicide and elopement precautions be taken. Also, some patients are identified by treating physicians upon admission as being sexual perpetrators or as having physically aggressive tendencies that require precaution or special consideration. The second amended complaint alleges that appropriate precautions were not taken and that physical injury to and sexual abuse of patients occurred because of inadequate conditions, such as understaffed shifts, lack of monitoring equipment, and inappropriate housing assignments.

CPC contends that the government has not adequately pled any of the essential elements of its FCA claim. Essentially, CPC asserts: (1) the government has not identified any Medicaid statute or rule that imposes an objective standard of safety or quality of care as a billing requirement; (2) absent an objective standard, CPC could not knowingly fail to comply with it; and (3) the existence of a comprehensive regulatory scheme designed to assure compliance with conditions of participation in the Medicaid program precludes FCA liability.[2]

The Court first notes that the government purports to be prosecuting this action in regard to numerous federal programs.[3] However, the only claims for payment identified in the second amended complaint are ones covered by Medicaid, a program administered by the Department of Health and Human Services through the Health Care Financing Administration. (Second Am. Compl. at 20, ¶ 100.) Therefore, only Medicaid regulations or requirements will be considered.

Statutes and regulations governing the Medicaid program clearly require health care providers to meet quality of care standards, and a provider's failure to meet such standards is a ground for exclusion from the program. *See* 42 U.S.C. § 1320a–7(b)(6)(B)

(the Secretary may exclude anyone who furnishes patient services "of a quality which fails to meet professionally recognized standards of health care"); *id.* § 1320c–5 (providers must assure that patient services "will be of a quality which meets professionally recognized standards of health care"). Also, because federal funds are disbursed through state Medicaid programs, statutes and regulations governing state programs are pertinent. To obtain funding, a state must have a plan for medical assistance. *Id.* § 1396. The plan must contain procedures relating to payment for services sufficient "to assure that payments are consistent with . . . quality of care." *Id.* § 1396a(a)(30)(A). Each state must have a fraud detection program, and the state plan must provide for exclusion of persons who have committed fraud or abuse. "*Abuse* means provider practices that are inconsistent with sound . . . medical practices, and result in an unnecessary cost to the Medicaid program, or in reimbursement for services . . . that fail to meet professionally recognized standards for health care." 42 C.F.R. § 455.2 (emphasis in original).

The Court finds no merit in CPC's arguments that it could not knowingly violate such vague standards. FCA cases cited by the government involving contractors who furnished inferior goods are inapposite, but they provide a useful analogy. It may be easier for a maker of widgets to determine whether its product meets contract specifications than for a hospital to determine whether its services meet "professionally recognized standards for health care." In the Court's view, however, a problem of measurement should not pose a bar to pursing an FCA claim against a provider of substandard health care services under appropriate circumstances.

In this case, the second amended complaint alleges that CPC charged the government for in-patient care of children and adolescents "who were subjected to unrea-

---

2. As noted earlier, CPC also contends that annual surveys required by the Medicaid program resulted in affirmative certifications that CPC was in compliance with applicable conditions of participation and thus prevented it from knowingly violating the FCA. This contention will not be considered here.

3. These federal programs are Medicare, Medicaid, the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), and the Federal Employees Health Benefits Program (FEHBP).

sonable risks of physical and mental harm, including sexual perpetration" and "the risk of harm was sufficiently unreasonable, and the risks of harm known by [CPC] were sufficiently frequent and blatant, that it was improper for [CPC] to admit government insured patients into such an environment and to bill the Government Payors for the care of these patients." (Second Am. Compl. at 7, ¶¶ 28–29.) The Court declines to hold that these allegations, if proved, cannot form the basis of an FCA claim.

The Court also rejects CPC's position that administrative procedures available under the Medicaid program are prerequisites to or substitutes for the government's bringing suit under the FCA. CPC provides no legal authority for its argument that the Medicaid program's internal enforcement scheme is the government's exclusive remedy when a provider fails to meet appropriate quality of care standards. The government, on the other hand, provides authority suggesting that the regulatory scheme was not intended to displace other available remedies, including the FCA. CPC in its reply does not refute the government's arguments on this point. Therefore, the Court declines to hold that the existence of a comprehensive regulatory scheme for monitoring quality of care issues under the Medicaid program precludes this FCA suit.

The Court also finds that the second amended complaint states actionable claims under the equitable theories of unjust enrichment and payment by mistake. The matters raised by CPC in its brief may provide viable defenses to these claims, but they do not undermine the legal sufficiency of the government's pleading.

For these reasons, Defendant's Motion to Dismiss Second Amended Complaint is DENIED.