Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, Agee,[1]
and Goodwyn, JJ.

SUE CAROL PERREAULT, ADMINISTRATRIX AND
PERSONAL REPRESENTATIVE OF THE ESTATE OF
ALBERT L. PERREAULT, ET AL.

                                          OPINION BY
v.  Record No. 071978       JUSTICE LAWRENCE L. KOONTZ, JR.
                                       September 12, 2008
THE FREE LANCE-STAR, ET AL.

            FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                       Ann Hunter Simpson, Judge


     This appeal arises from four separate wrongful death

actions brought pursuant to Code § 8.01-50 and ultimately

settled by the parties through mediation.  The principal issue

we consider is whether the circuit court erred in requiring

the settling parties to those actions to file written

petitions reciting the financial terms of the compromise

settlements in order to obtain court approval of those

settlements pursuant to Code § 8.01-55.  We also consider

whether the contents of such petitions remain subject to the

presumption of public access to court records mandated by Code

§ 17.1-208 notwithstanding the provisions of Code § 8.01-

581.22, which govern the confidentiality of mediation

_____

     [1] Justice Agee participated in the hearing and decision of
this case prior to his retirement from the Court on June 30,
2008.

proceedings.  Finally, we review the decision of the circuit court denying a request to partially seal the records in these cases by permitting the redaction of the monetary amounts of the compromise settlements in the court records.

BACKGROUND

Sue Carol Perreault, Phyllis Ann Mulholland, Sue Ella C. Musselman, and Dona J. Holt, each in her capacity as administratrix of an estate (collectively, "the personal representatives"), brought wrongful death actions in the Circuit Court of Spotsylvania County against several defendants including B. Braun Medical, Inc. and its subsidiary Central Admixture Pharmacy Services (collectively, "CAPS"). With respect to the alleged liability of CAPS, each action asserted that the decedent's death resulted from the administration during open-heart surgery of an improperly formulated or contaminated cardioplegic solution manufactured and distributed by CAPS.[2]

---

[2] Cardioplegia is the medical term for the temporary paralyzation of the heart muscle during cardiac surgical procedures.  Since the 1960s, the most common method of protecting the heart during cardioplegia is the infusion of a cold crystalloid solution into the heart.  Hans J. Geissler and Uwe Mehlhorn, Cold crystalloid cardioplegia, The Multimedia Manual of Cardiothoracic Surgery (2006).

The personal representatives entered into mediation with CAPS that resulted in compromise settlements of the wrongful death claims. As expressed in the settlement agreements, a principal concern of the personal representatives and CAPS was the desire to keep the terms, and specifically the financial terms, of the settlements confidential.

Thereafter, on a date not specified in the record, Perreault, Mulholland, and Musselman applied to the circuit court under Code § 8.01-55 for approval of their respective compromise settlements by making oral motions to the court in a closed, in camera hearing. Because no written petitions seeking approval of the settlements were submitted to the circuit court in these cases, the record originally provided to this Court by the circuit court was unclear as to how this hearing was docketed and whether notice was given to potential "parties in interest" or that such parties were convened as required by Code § 8.01-55.

By writ of certiorari entered May 21, 2008, this Court directed the circuit court to forward the records of the original actions filed by the personal representatives. An examination of those records did not disclose any praecipe for, or notice to any parties of, the in camera hearing. The proceeding conducted during that hearing was not transcribed. The record merely reflects that on February 16, 2007, the

3

circuit court entered orders approving the compromise settlements in these three cases. The orders recite only the fact that the claims against CAPS had been resolved by compromise and that the personal representatives and statutory beneficiaries of the decedent in each case agreed to and approved the compromise.[3]

By letter from counsel to the circuit court dated February 28, 2007, The Free Lance-Star, a newspaper published in Fredericksburg, and Media General Operations, Inc., publisher of The Richmond Times-Dispatch (collectively, "the newspapers"), complained of a "lack of transparency" in the approval of the compromise settlements in the Perreault, Mulholland, and Musselman cases. The newspapers contended that a reporter for The Free Lance-Star had been barred from attending the hearing concerning approval of the compromise settlements and that the failure to require petitions setting out the terms of the compromises was "inconsistent with" the requirements of Code § 8.01-55. The newspapers further

---

[3] There is no suggestion of any misconduct by any of the personal representatives in these cases or that the compromise settlements were not appropriate. We are confident in our assumption that the circuit court was made fully aware of the specific financial terms of the compromise settlement in each case.

4

contended that under Shenandoah Publishing House, Inc. v. Fanning, 235 Va. 253, 368 S.E.2d 253 (1988), petitions for approval of compromise settlements of wrongful death claims were judicial records subject to disclosure under Code § 17.1-208.

On March 2, 2007, the newspapers filed a formal petition to intervene in the Perreault, Mulholland, and Musselman cases. The newspapers again asserted that approval of a compromise settlement of a wrongful death claim pursuant to Code § 8.01-55 required the filing of a petition that recited the particulars of the settlement and, thus, that the circuit court erred in approving the settlements in these cases based on oral motions. The newspapers further asserted that, under Shenandoah Publishing and Code § 17.1-208, such petitions were judicial documents subject to inspection by the media and the general public. The newspapers requested that Perreault, Mulholland, and Musselman be required to file petitions "that fully comply with [Code] Section 8.01-55." In response to the petition to intervene, on March 8, 2007, the circuit court entered orders suspending the February 16, 2007 orders approving the compromise settlements. On May 2, 2007, the court entered an order permitting the newspapers to intervene in the Perreault, Mulholland, and Musselman cases.

5

On June 6, 2007, Holt filed in the circuit court a written petition for approval of the compromise settlement of her wrongful death action against CAPS. The petition noted the fact of the compromise settlement and that "the reason for the compromise is that the matter is highly contested, liability is not admitted, there is uncertainty associated with litigation, the time value of settlement versus trial currently scheduled greater than one year from the date of the Petition [to approve the settlement], and the best interests of all parties concerned." However, no specific terms of the settlement with regard to the consideration to be paid were recited in the petition. An unexecuted copy of the settlement agreement appended to the petition was redacted to remove all references to payments to be made to the appropriate statutory beneficiaries of the estate.

On June 11, 2007, the circuit court entered an order requiring Perreault, Mulholland, and Musselman to file petitions that "shall state as to each of the settled cases the compromise, its terms and the reasons therefor." The order further provided that "[t]he settling parties and the newspaper[s]" would be permitted "to present evidence and to otherwise be heard on the issue of whether the settling parties can meet the burden imposed by law to permit the petition[s] filed . . . to remain under seal."

Also on June 11, 2007, during a hearing on Holt's petition for approval of the compromise settlement in her case, the newspapers appeared and made an oral motion to intervene in that case as well. The circuit court directed that Holt be required to file under seal an unredacted copy of the settlement agreement. At the conclusion of the hearing, the court entered an order, styled as a final order, approving the settlement based upon the petition and the redacted exhibit. The order, however, provided that the issue whether Holt would be required to file an unredacted settlement agreement would be subsequently reviewed.

In response to the circuit court's order, Perreault, Mulholland, and Musselman filed the requested petitions, which were placed under seal. They also filed a joint motion to permit the petitions to be filed with "limited redactions" along with supporting affidavits by each of them and Michael Koch, Vice President of Sales and Support Services for CAPS, stating the reasons therefor. Holt filed an identical motion supported by her own affidavit and that of Koch. Each motion also contained exhibits showing the media coverage of wrongful death actions involving the alleged misformulation or contamination of cardioplegic solutions by CAPS.

The circuit court heard extensive argument on the issue whether Code § 8.01-55 required a party seeking approval of a

7

compromise settlement in a wrongful death action to file a petition, whether that petition was required to contain comprehensive details of the compromise, and also whether the contents of such petitions were subject to disclosure both generally and in the present cases specifically. Apart from the affidavits already submitted, no additional evidence was received in the Perreault, Mulholland, and Musselman cases with respect to the request to redact the compromise settlements. Holt and two other beneficiaries under the compromise settlement in that case did testify. Their testimony was limited to explaining their decision to agree to the compromise.

On June 29, 2007, the circuit court entered orders in the four cases ruling that Code § 8.01-55 required the personal representatives to file petitions for approval of the compromise settlements and that the petitions must "includ[e] the terms and conditions of each such settlement." The court further ruled that "the settling parties have failed to meet their burden to establish a compelling reason sufficient to overcome the presumption of openness of such settlement information." Accordingly, the court denied the motions to permit the filing of redacted copies of the settlement agreements. However, the court permitted the petitions and the unredacted settlement agreements to remain under seal "for

8

the purpose of preserving the settling parties' objections to the [c]ourt's ruling pending such appeal as they may choose to take from this Order."[4]  In an order dated March 6, 2008, we awarded the personal representatives in all four cases and CAPS this appeal.

## DISCUSSION

The personal representatives and CAPS (collectively, "the settling parties") have asserted three assignments of error in this appeal.  First, they contend that the circuit court erred in construing Code § 8.01-55 to require the filing of a petition stating the particulars of a compromise settlement, and specifically the financial terms of the compromise settlement, in order for the court to approve the settlement of a wrongful death action.  Next, they contend that the circuit court erred as a matter of law in these cases by failing to give proper effect to the confidentiality provisions of Code § 8.01-581.22.  Finally, the settling parties contend that even if the court did not err in its application of Code § 8.01-55 as applied to court-approved compromise settlements of wrongful death actions generally, it

---

[4] In Holt's case, the court also granted, nunc pro tunc to June 11, 2007, the newspapers' motion to intervene in that case.

9

nonetheless erred in failing to find that the specific circumstances of these cases warranted permitting the filing of redacted settlement agreements. We will address these issues seriatim, beginning with the challenge to the circuit court's interpretation of Code § 8.01-55.

Because the construction of a statute presents a pure question of law, we apply a de novo standard of review to the judgment of the circuit court, as here, that is based solely on its interpretation of a statute. Logan v. City Council, 275 Va. 483, 492, 659 S.E.2d 296, 300 (2008). Code § 8.01-55 in relevant part, provides that:

> The personal representative of the deceased may compromise any claim to damages arising under or by virtue of § 8.01-50, including claims under the provision of a liability insurance policy, before or after an action is brought, with the approval of the court in which the action was brought, or if an action has not been brought, with the consent of any circuit court. Such approval may be applied for on petition to such court, by the personal representative, or by any potential defendant, or by any interested insurance carrier . . . . The petition shall state the compromise, its terms and the reason therefor. The court shall require the convening of the parties in interest . . . . The parties in interest shall be deemed to be convened if each such party (i) endorses the order by which the court approves the compromise or (ii) is given notice of the hearing and proposed compromise as provided in § 8.01-296 if a resident of the Commonwealth or as provided in § 8.01-320 if a nonresident, or is otherwise given reasonable notice of the hearing and proposed compromise as may be required by the court.

(Emphasis added.)

10

The settling parties essentially contend that nothing in Code § 8.01-55 requires the "petition" made to the court for approval of a compromise of a wrongful death claim to be in writing or to otherwise require disclosure of the financial terms of that compromise in a public record.  We disagree.

In resolving this issue, we consider the language of Code § 8.01-55 under the settled principle of statutory construction that courts are bound by the plain meaning of statutory language.  Hicks v. Mellis, 275 Va. 213, 218, 657 S.E.2d 142, 144 (2008); Young v. Commonwealth, 273 Va. 528, 533, 643 S.E.2d 491, 493 (2007); Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 439, 621 S.E.2d 78, 86-87 (2005).  Under this principle, when the language of a statute is plain and unambiguous, courts may not interpret that language in a manner effectively holding that the General Assembly did not mean what it actually stated.  Hicks, 275 Va. at 218, 657 S.E.2d at 144; Young, 273 Va. at 533, 643 S.E.2d at 493; Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006).

Initially, we note that in enacting Code § 8.01-55, the General Assembly required that "settlements of wrongful death claims must be approved by the courts."  Shenandoah Publishing, 235 Va. at 260, 368 S.E.2d at 256.  In plain and unambiguous language, Code § 8.01-55 requires that before a

11

circuit court may approve any settlement of a wrongful death claim, the statutorily designated party must apply for such approval by petition to the court.  The usual and accepted meaning of "petition" is "[a] formal written request presented to a court or other official body."  Black's Law Dictionary 1182 (8th ed. 2004) (emphasis added).  Moreover, Code § 8.01-55 is equally unambiguous in its requirement that "[t]he petition shall state the compromise, its terms and the reason therefor."  (Emphasis added.)  Common sense dictates that the most significant of the "terms" of any compromise settlement of a wrongful death claim include the monetary provisions in consideration of which the party with the right to seek damages is compromising its right to sue for those damages.  Clearly, the settling parties' contention that Code § 8.01-55 does not require a written petition to the circuit court or that such petition need not state the financial terms of the compromise settlement is not supported by the plain meaning of the language of the statute.

Furthermore, in Ramey v. Bobbitt, 250 Va. 474, 481, 463 S.E.2d 437, 441 (1995), we held that "[t]hose portions of a release that are not made part of a wrongful death compromise settlement approved by a circuit court [under Code § 8.01-55] are not binding on the parties to the release."  Accordingly, if the terms of a settlement were not made express in the

12

petition filed under Code § 8.01-55 or were not otherwise made a part of the record, there would be no definite basis upon which the court would later be able to determine what the parties had bound themselves to in the compromise settlement if a dispute subsequently arose regarding compliance with the settlement.

For these reasons, we hold that the circuit court did not err in construing Code § 8.01-55 to require a party seeking approval of a compromise settlement of a wrongful death claim to file in the court a written petition that includes the complete and unredacted terms of the compromise settlement.

We now turn to the settling parties' contention that the circuit court erred by failing to give proper effect to the confidentiality provisions of Code § 8.01-581.22.  The resolution of this contention necessarily invokes the interplay among the applications of Code §§ 8.01-55, 8.01-581.22 and 17.1-208.

In relevant part, Code § 17.1-208 provides that:

> Except as otherwise provided by law, any records and papers of every circuit court that are maintained by the clerk of the circuit court shall be open to inspection by any person and the clerk shall, when requested, furnish copies thereof, except in cases in which it is otherwise specially provided.

In Shenandoah Publishing, we identified the "judicial records" that ordinarily come within the ambit of this statute

13

as "the pleadings and any exhibits or motions filed by the parties and all orders entered by the trial court in the judicial proceedings leading to the judgment under review." 235 Va. at 257, 368 S.E.2d at 255. The petition required by Code § 8.01-55 is clearly a pleading and comports with this definition of a judicial record. Accordingly, the petition comes within the statutory presumption of openness to the public contained in Code § 17.1-208.

In relevant part, Code § 8.01-581.22 provides that:

> All memoranda, work products and other materials contained in the case files of a mediator or mediation program are confidential. . . . However, a written mediated agreement signed by the parties shall not be confidential, unless the parties otherwise agree in writing.
>
> Confidential materials and communications are not subject to disclosure in discovery or in any judicial or administrative proceeding except (i) where all parties to the mediation agree, in writing, to waive the confidentiality, . . . or (ix) as provided by law or rule.

The settling parties initially stress the undisputed fact that the compromise settlements of the wrongful death claims in these cases resulted from mediation and that the parties to the mediation agreed that the terms of the settlements were to remain confidential. Consequently, the settling parties contend, notwithstanding the mandate of Code § 8.01-55 that the terms of the compromise settlements be included in the proper petitions to the circuit court for approval of the

14

settlements, that Code § 8.01-581.22 operates so as to ensure the confidentiality of the terms of the mediated settlements.

The settling parties' contention creates an unnecessary tension between the provisions of Code §§ 8.01-55 and 8.01-581.22 and is an unwarranted interpretation of the pertinent statutory scheme. The thrust of their contention is that the confidentiality provisions of Code § 8.01-581.22 require that the provisions of Code § 8.01-55 be applied so that the circuit court will be informed of the specific financial terms of the compromise settlement but those terms would not be included in the written petition so as to be subject to disclosure to the public under Code § 17.1-208. On brief in this appeal, the settling parties suggest that this could be accomplished by permitting the circuit court "to conduct all portions of the settlement approval petition in open court, but permit the [s]ettling [p]arties to present (but not file) a written document to the court that states the settlements' dollar amount and distribution." We disagree.

In resolving this issue we acknowledge that within the pertinent statutory scheme there exists at least a facial tension between the "[e]xcept as otherwise provided by law" provision contained in Code § 17.1-208 and the "as provided by law or rule" provision contained in the confidentiality provisions of Code § 8.01-581.22(ix). The former suggests a

15

limitation upon public access to judicial records whereas the latter suggests a limitation upon otherwise confidential mediated agreements.  Because of the view we take in resolving this case, we need not further address that issue.

The statutory scheme that provides for resolution of civil disputes through mediation found in Code § 8.01-581.21 et seq., including the confidentiality provisions of Code § 8.01-581.22 at issue here, is one of general application to all mediated settlements, not just to settlements of wrongful death claims.  By contrast, Code § 8.01-55 is a statute of precise and specific application, dealing only with the requirement for court approval of compromise settlements of wrongful death claims.  Cf. Peerless Ins. Co. v. County of Fairfax, 274 Va. 236, 244, 645 S.E.2d 478, 483 (2007) (holding that when one statute addresses a subject in a general manner and another statute addresses part of the same subject in a more specific manner, the differing statutes should be harmonized if possible, but when they conflict the more specific statute prevails); see also, Alliance to Save the Mattaponi, 270 Va. at 439-40, 621 S.E.2d at 87; Capelle v. Orange County, 269 Va. 60, 65, 607 S.E.2d 103, 105 (2005).

Undoubtedly, and consistent with the provisions of Code § 8.01-581.22, it may be common for settlements of various types of civil claims to be achieved through mediation and,

16

yet, for the terms of such settlements not to be publicly disclosed because the parties agree not to do so. In this case, however, we must consider the harmonious application of Code § 8.01-55 and Code § 8.01-581.22 in light of the fact that the settling parties were required to obtain court approval of the mediated settlements of these wrongful death claims and to disclose the terms of those settlements in the petitions to the court seeking such approval.

Although Shenandoah Publishing did not involve a mediated settlement of a wrongful death claim, we nonetheless find the rationale underlying the decision in that case to be instructive. In Shenandoah Publishing, we stated that the legislative purpose underpinning Code § 8.01-55 served the public's "societal interest in learning whether compromise settlements are equitable and whether the courts are administering properly the powers conferred upon them." 235 Va. at 260, 368 S.E.2d at 256. This is so because "the people have a vital interest, one of personal and familial as well as community concern, in cases involving claims of medical malpractice on the part of licensed practitioners and other health care providers." Id.

Given the salutary purpose of Code § 8.01-55, we cannot conceive that the General Assembly intended to permit the confidentiality provisions allowed but not required by Code

17

§ 8.01-581.22 to trump the provisions of Code § 8.01-55 and, consequently, the right of public access provided for by Code § 17.1-208 in the context of the records of court approval of the compromise settlement of a wrongful death claim achieved through mediation.  Accordingly, we hold that the circuit court did not err in ruling that in approving the compromise settlements in the present cases, the court was not subject to a de jure requirement under Code § 8.01-581.22 to place the record, or at least that portion of it detailing the financial terms of the compromise settlements, under seal.

Finally, we consider the settling parties' assertion that the circuit court erred in finding that the circumstances of these particular cases did not warrant their being permitted to redact from the record all references to the financial terms of the compromise settlements.  When the sealing of a record or part thereof is not a duty imposed by law, the decision whether to seal the record rests within the sound discretion of the circuit court.  See In re Worrell Enters., Inc., 14 Va. App. 671, 675, 419 S.E.2d 271, 274 (1992).  In Shenandoah Publishing, we said that in order to overcome the strong presumption in favor of public access to judicial records "the moving party must bear the burden of establishing an interest so compelling that it cannot be protected

reasonably by some measure other than a protective order."
235 Va. at 259, 368 S.E.2d at 256.

On brief, the settling parties assert that under Shenandoah Publishing, "when a court considers a motion to seal records, or exclude the public from civil judicial proceedings, 'it may not base its decision on conclusory assertions alone, but must make specific factual findings.' " Thus, they contend that the circuit court was required to make express findings of fact supporting its decision not to permit redaction of the records. We disagree.

The settling parties' assertion wholly mischaracterizes the holding in Shenandoah Publishing. The quotation that the settling parties have drawn from the opinion appears only as a parenthetical to a citation in the opinion of the Court. 235 Va. at 259, 368 S.E.2d at 256 (citing and quoting In re Washington Post Co., 807 F.2d 383, 392 (4th Cir. 1986)). Moreover, in context it is clear that the citation and its explanatory parenthetical were supporting a proposition directly contradictory of the position being asserted by the settling parties in this case. When correctly interpreted, Shenandoah Publishing requires that a court may not base its decision to limit public access to court proceedings or records upon the conclusory assertions of the party requesting the closure. Id. Thus, the court must make specific factual

19

findings only to support a decision to <u>restrict</u> public access to court records or proceedings.  Because the presumption is in favor of openness, a court need not make findings of fact to justify a decision denying a request for closure of a proceeding or record absent any applicable statute or Rule of Court requiring such finding.

Similarly, the settling parties' reliance on <u>Richmond Newspapers, Inc. v. Commonwealth</u>, 222 Va. 574, 590, 281 S.E.2d 915, 924 (1981), to assert that the newspapers as "intervenors . . . have the burden of showing that reasonable alternatives to closure are available" is misplaced.  That burden exists only after the party seeking to restrict public access to judicial proceedings or records has made an adequate showing that it is entitled to such relief.  Accordingly, our focus in this appeal is limited to whether the circuit court abused its discretion in finding that the settling parties failed to meet their burden to establish a compelling reason sufficient to overcome the presumption of public access to the records of the compromise settlements in these cases.

In Koch's affidavit submitted on behalf of CAPS, it is asserted that if the terms of the compromise settlements were made public, CAPS "could become the target of lawsuits by individuals and/or businesses who might file lawsuits for the sole purpose of extracting a 'nuisance value' settlement."

20

Koch further asserted that CAPS would not have entered into the settlement agreements had it known that the terms would not remain confidential and that an order requiring disclosure of the financial terms of the settlement would "deprive the CAPS defendants of one of the benefits it bargained for and obtained in exchange for the consideration paid."

CAPS's concern that disclosure of the financial terms of the compromise settlements might subject it to further litigation may be well founded. However, that concern reflects no more than an unsupported conclusory assertion and pales in view of the statutory presumption of public access to judicial records contained in Code § 17.1-208.

CAPS's assertion that the circuit court's order denying the request to redact the settlement agreements would deny it the benefit of its bargain is based on the legally flawed presumption that private parties can agree to deprive the public of the right of access to judicial records guaranteed by Code § 17.1-208. While CAPS may have anticipated that the court would permit the petitions to approve the compromise settlements of the wrongful death claims at issue here to be made without disclosure of the financial terms of these settlements, it did so at its own risk. Clearly it did not lose any benefit of its bargains through the court's decision denying its request to redact the financial terms of the

settlement agreements.  The personal representatives and the beneficiaries to the settlements are still bound by their agreements that they keep the terms thereof confidential, and they fulfilled that duty by joining with CAPS in seeking to have the records sealed.  The court's decision to not permit redaction of the financial terms from the petitions does not constitute a breach of that duty.

In their affidavits submitted to the circuit court, the personal representatives stated various concerns they had with respect to having the financial terms of the compromise settlements made public.  They asserted that the settlements of their claims were "private matter[s] between [the beneficiaries] and the defendants;" that they did not desire to be subject to further publicity as this would cause them "to re-live the trauma" associated with their decedents' demise; and, that publicity concerning the financial terms of the settlements might result in unwanted solicitations.  Holt further expressed concern that she might be targeted by criminals and that she and her family "will be subject to public ridicule, criticism, and embarrassment" for having accepted the compromise settlement.

While we are not unmindful of the seriousness of the concerns expressed by the personal representatives with respect to the potential consequences of the financial terms

22

of their settlements being made public, concerns of emotional damage or financial harm when stated "in the abstract, [do not] constitute sufficient reasons to seal judicial records." Shenandoah Publishing, 235 Va. at 259, 368 S.E.2d at 256. "[T]he desire of the litigants is not sufficient reason to override the presumption of openness." Id. Moreover, it is not within the province of this Court to alter the pertinent statutory scheme which otherwise might warrant amendment by the legislature so as to preserve the confidentiality of the mediated settlement terms involving wrongful death claims such as those at issue here. Accordingly, we hold that the circuit court did not err in denying the settling parties' request to have the financial terms of the compromise settlements redacted in the court records.

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court. We will remand the cases to the circuit court with direction that the records be unsealed in the Perreault, Mulholland, and Musselman cases and that an unredacted version of the settlement in the Holt case be entered into the record in accord with the prior order of the court.

Affirmed and remanded.

23