PRESENT: All the Justices

MARSHA RENEE BERRY

v. Record No. 190331

OPINION BY
JUSTICE CLEO E. POWELL
AUGUST 20, 2020

GREGORY JEROME FITZHUGH, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Marsha Renee Berry ("Marsha") appeals the decision of the Circuit Court of Fairfax

County denying her request for attorneys' fees from the unrepresented parties in her partition suit

under Code § 8.01-92. She also appeals the trial court's denial of her requests to share the costs

for bringing the action and for an award of the rental value of the subject property from the

parties who occupied it.

## I. BACKGROUND

In 2012, five siblings, Marsha, Gregory Jerome Fitzhugh ("Gregory"), Lisa Maria

Montgomery ("Lisa"), Rodney Quentin Fitzhugh ("Rodney") and Marilyn Octavia White

("Marilyn"), inherited real property located in Fairfax County (the "Property") from their

mother.[1] Although their mother left instructions for the Property to be sold and the proceeds

divided among her children, the siblings agreed to retain the Property for an undetermined period

of time. The Property included a five-bedroom, split foyer house. The main level had four

bedrooms and two baths; the basement level had a single bedroom, a single bath and a small,

secondary kitchen.

---

[1] A sixth sibling, Sherry Gilliam, also inherited the Property but her interest was bought
out by the other five siblings shortly after they inherited the Property.

At the time the siblings inherited the Property, Gregory was living in the basement of the house and Marilyn was living in the main level. In 2013, Marilyn moved out and Lisa moved into the main level of the house where she continued to reside until the trial. Marsha and Rodney never lived on the Property after the siblings inherited it, nor did they ever attempt to live there.

In 2018, Marsha brought a suit to partition the Property and requested that the trial court compel its sale, divide the proceeds of the sale among the parties "according to their respective rights and interests" after subtracting the costs and expenses of her suit, and award such other relief as equity may require. In her complaint, Marsha named the other four siblings as defendants. Gregory and Lisa (collectively, the "represented siblings") opposed the complaint for partition and were represented by counsel throughout the proceedings; Marilyn and Rodney (collectively, the "unrepresented siblings"), did not file any pleadings opposing Marsha's complaint and appeared at trial pro se.

At trial, Marsha testified that the siblings had agreed that the individuals living on the Property would pay "the taxes, insurance and upkeep as rent." However, she claimed that all of the siblings were paying the taxes and there "was never any upkeep" performed on the Property. She further stated that she believed that the unrepresented siblings also wanted the Property to be sold. Marsha noted that she had previously brought a suit to partition the property in 2014 with the unrepresented siblings as co-plaintiffs. According to Marsha, she dismissed the previous action because Rodney had asked her to, since he thought that they would lose money if the partition occurred at that time.

Lisa testified that the siblings had agreed that they "would jointly split the taxes and insurance" and those living on the Property would only be responsible for upkeep and utilities. Gregory presented evidence documenting all of the upkeep that had been performed on the

2

Property.  Specifically, he presented receipts demonstrating that he had paid more than $20,000 for upkeep of the Property.

The unrepresented siblings were called as witnesses by the represented siblings.  Marilyn testified about when she lived on the Property and when Lisa moved onto the Property. Marilyn also agreed that Gregory and Lisa had been taking care of the upkeep of the Property. Rodney, on the other hand, testified that the siblings had agreed that they would all be "financially responsible for all the upkeep, the taxes, and stuff like that" and that there had not been any discussions about anyone paying rent to live on the Property.  Neither of the unrepresented siblings testified regarding whether they were in favor of or opposed to the partition suit.  Additionally, the unrepresented siblings did not present any evidence on their behalf, question any witnesses, or offer any argument to the trial court.

During her closing argument, Marsha requested that, upon the sale of the Property, the shares of Gregory, Lisa and Marilyn should be adjusted to account for the fair rental value of their time of occupancy.[2]  She also requested that her attorney's fees "be shared by the unrepresented parties in this case pursuant to Virginia Code § 8.01-92."  Finally, she requested that all of her remaining costs in bringing the partition suit be paid out of the proceeds of the sale of the Property.

After considering the parties' arguments, the trial court found that a partition could not be "conveniently made" and that "the interest of the five siblings in the land or its proceeds [would] be promoted by the sale."[3]  The trial court ordered that the proceeds of the sale be split equally

---

[2] Marsha had presented testimony from a real estate appraiser regarding the fair market rental value of the Property.

[3] This action was decided by the circuit court in a final judgment dated October 22, 2019. In the 2020 session of the General Assembly, numerous provisions of the Uniform Partition of Heirs Property Act were adopted by the Legislature.  Code §§ 8.01-81 and 8.01-83 were

3

among all five siblings, as Marsha "ha[d] not adequately proven the quantifiable evidence needed for receiving compensation in excess of" her ownership interest in the Property. The trial court denied Marsha's request for fair rental value, finding that there was not enough evidence to show that Marsha was "banned and could not live [on the Property]." It further noted that there was no formal agreement regarding rent and that Lisa and Gregory had paid "for maintenance and care of the [P]roperty." With regard to Marsha's request for attorney's fees, the trial court stated:

> I don't think it's fair for two people that were on a different side as pro se, unrepresented by counsel, [to] have to pay for services rendered to the opposing side. So I'm not going to require attorney's fees on that matter. All parties will pay their own attorney's fees.

Marsha appeals.

## II. ANALYSIS

On appeal, Marsha argues that the trial court erred in refusing to award her reasonable attorney's fees out of the shares of the unrepresented siblings in the proceeds of the sale of the Property. She further contends that the trial court's failure to divide the costs of the partition suit equally among the siblings was erroneous. Additionally, Marsha also asserts that the trial court should have reduced the shares of the proceeds for the siblings who lived on the Property by the fair market rental value of the Property and correspondingly increased the shares of the proceeds for the siblings who did not live on the Property by that amount.

---

amended, new statutes codified as Code §§ 8.01-81.1, 8.01-83.1, 8.01-83.2, and 8.01-83.3 were added, and Code § 8.01-82 was repealed. *See* 2020 Acts chs. 115, 193. While some of those changes affect the "convenience" standard for partition, we decide the present appeal under the provisions of the law that existed at the time this case was heard and decided in the circuit court. Code § 8.01-92, discussed later in this opinion, was not changed in the 2020 legislation. Nor was the accounting statute, Code § 8.01-31, altered in the recent legislative amendments.

4

A. Attorney's Fees

In her first assignment of error, Marsha insists that the trial court erred in refusing to award her attorney's fees out of the unrepresented siblings' shares in the proceeds of the sale of the Property. According to Marsha, Code § 8.01-92 expressly requires that the trial court award her reasonable attorney's fees from the shares of the unrepresented siblings. Whether the trial court was statutorily required to award attorney's fees to Marsha out of the unrepresented siblings' shares presents a question of statutory interpretation. Accordingly, the Court reviews this matter de novo. *Perreault v. The Free Lance-Star*, 276 Va. 375, 384 (2008).

Code § 8.01-92 states:

> In any partition suit when there are unrepresented shares, the court shall allow reasonable fees to the attorney or attorneys bringing the action on account of the services rendered to the parceners unrepresented by counsel.

Marsha relies on the General Assembly's use of the word "shall" to insist that the trial court was required to award attorney's fees out of the unrepresented shares. Contrary to Marsha's argument, the mere use of the word "shall" is not dispositive. *Johnson v. Arlington Cty.*, 292 Va. 843, 851 (2016). Rather, "[w]hether the word 'shall' is permissive or mandatory depends on 'subject matter and context.'" *Id.* (quoting *Pettus v. Hendricks*, 113 Va. 326, 330 (1912)).

By focusing her argument solely on the word "shall," Marsha ignores the context in which the word is used. Under her interpretation of the statute, Code § 8.01-92 always mandates that attorney's fees be awarded against all parceners unrepresented by counsel. This is incorrect. The statute actually includes an express limitation on when attorney's fees must be awarded against unrepresented parceners. Specifically, Code § 8.01-92 only requires an award of attorney's fees when those fees are incurred "on account of the services rendered" to

5

unrepresented parceners. Thus, the dispositive issue in this case is whether services were rendered to the unrepresented siblings. As this is a question of fact, we give deference to the trial court's findings. *See Rafalko v. Georgiadis*, 290 Va. 384, 401 (2015).

Here, the trial court unequivocally found that no services were rendered to the unrepresented siblings. In denying Marsha's request for attorney's fees, the trial court explained that the unrepresented siblings should not have to pay "for services rendered to the opposing side." By characterizing the partition as "services rendered to the opposing side," the trial court clearly found that no services were rendered by Marsha's attorney to either of the unrepresented siblings.

Instead of addressing the trial court's explicit statements on the nature of the services rendered, Marsha focuses on the benefit that the unrepresented siblings received. Specifically, she relies on the trial court's statement that all five siblings' interest in the land would be promoted by the sale of the Property because "they are going to get money from the [sale]." Stated differently, Marsha is asserting that the fact that the unrepresented siblings received a benefit demonstrates that services have been rendered to them.

While it is true that receiving a benefit can indicate services were rendered, it is not the foregone conclusion that Marsha suggests. Such an approach omits any consideration of the parties' interests in the outcome of the litigation, which this Court has explained is an important factor. *See Patterson v. Old Dominion Tr. Co.*, 156 Va. 763, 774 (1931) (recognizing that, even where the actions of a plaintiff create a common benefit for all parties, attorney's fees should not be awarded against a party whose interests are antagonistic to those of the plaintiff). Here, Marsha offered no evidence to demonstrate that the unrepresented siblings supported her partition suit. As the party claiming the fees, she bore the burden of presenting that evidence and

6

persuading the factfinder she was entitled to the fees under the statute. Therefore, she cannot rebut the trial court's implicit ruling that their interests were antagonistic to hers.

### B. Costs

Marsha next argues that the trial court erred in ordering that she bear the costs of the suit without contribution from her siblings. According to Marsha, Code § 8.01-31 ensures that tenants in common receive equal shares in the Property at the time of partition. She contends that the trial court violated Code § 8.01-31 by failing to divide the costs associated with the partition suit amongst all five siblings because, absent such a division, only her share will be reduced. We disagree.

Code § 8.01-31 states:

> An accounting in equity may be had against any fiduciary or by one joint tenant, tenant in common, or coparcener for receiving more than comes to his just share or proportion, or against the personal representative of any such party.

*Id.*

Although the core reasoning of Marsha's argument is correct, insofar as Code § 8.01-31 ensures that tenants in common receive their fair share of a co-owned property, the statute is not as far reaching as Marsha asserts. By its plain language, Code § 8.01-31 authorizes a cause of action seeking "[a]n accounting *in equity*." (Emphasis added.) A court acting in equity has discretion in the award of costs. *See* Code § 17.1-600; *Brown v. Coates*, 165 Va. 254, 258 (1935) ("The apportionment of costs is a matter within the sound judicial discretion of the trial court."). Thus, absent a showing that the trial court abused its discretion, we will affirm the decision of the trial court.

Here, it is important to note that Marsha is not claiming that the trial court failed to split the costs of partitioning the Property among the siblings. Nor could she, as the trial court

7

explicitly ruled that the all five siblings would have to share in these costs. Rather, Marsha is seeking to have all five siblings share the costs she incurred bringing this action, the majority of which relate to her failed attempt to recover the fair rental value of the Property from Gregory, Lisa and, to a far lesser extent, Marilyn.[4] As a general matter, a court does not abuse its discretion in refusing to apportion costs to an opposing party that are related to a failed claim.[5] Accordingly, the decision of the trial court will be affirmed.

### C. Fair Rental Value

Marsha further argues that, under Code § 8.01-31, the trial court erred in refusing to award the fair rental value of the Property to the siblings not in possession of the Property from the siblings in possession. She contends that there was sufficient evidence to establish that the siblings living on the Property excluded the remaining siblings from the Property and, because they were living on the Property rent free, their shares should be reduced by the fair rental value of the Property. For the reasons stated below, we will affirm the decision of the trial court.

We note that the trial court gave three specific bases for refusing to award fair rental value. First, it noted that the evidence was insufficient to establish that the other siblings were excluded from the Property. Next, the trial court pointed out that the siblings never had any formal agreement regarding rent. Finally, in the context of whether other expenditures would be considered in lieu of rent, the trial court relied on the fact that Lisa and Gregory paid for the maintenance and care of the Property. As previously noted, Marsha only challenges one of these

---

[4] Specifically, of the $2,314 Marsha claimed in costs, $1,400 related to the appraisal of the Property and the fees for the appraiser to testify regarding the fair rental value of the Property.

[5] To the extent that certain costs related to her successful partition suit, Marsha's claim still fails in the absence of any evidence supporting those costs or demonstrating that the trial court abused its discretion in refusing to apportion those costs among the parties.

8

bases:  whether evidence was sufficient to show that the other siblings were excluded from the Property.  This Court has repeatedly admonished that, where there is an independent basis to support a lower court's ruling that has not been challenged on appeal, our review is limited to a determination of whether one of the unchallenged bases "provides a sufficient legal foundation for the ruling."  *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 422 (2012).

Here, the trial court's reliance on the fact that Lisa and Gregory paid for the upkeep and care of the Property provides a sufficient basis for its ruling.  The trial court clearly determined that the amount Lisa and Gregory spent maintaining the Property essentially offset any rent that they may have owed to the other siblings.  Such a determination would provide a separate and independent legal basis for affirming the trial court's ruling on this issue.  Accordingly, the trial court's refusal to award fair rental value will be affirmed.

## III.  CONCLUSION

For the foregoing reasons we will affirm the judgment of the trial court.

*Affirmed.*