PRESENT:  All the Justices

DOROTHY C. DAVIS, DERIVATIVELY ON
BEHALF OF WOODSIDE PROPERTIES, LLC

                                                OPINION BY
v.  Record No. 171020                JUSTICE STEPHEN R. McCULLOUGH
                                                May 31, 2018
MKR DEVELOPMENT, LLC, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James F. D'Alton, Jr., Judge[1]

The circuit court dismissed without prejudice this derivative action on the ground that the plaintiff had failed to first make a demand for the limited liability company to take action.  The plaintiff appeals from this ruling, arguing that the law does not require such a demand when doing so would be futile.  The applicable statute, Code § 13.1-1042, and related provisions present us with a conundrum because competing canons of statutory construction point in opposite directions.  We resolve this conundrum by concluding that the 2011 amendments to Code § 13.1-1042 did not abolish the futility exception to the demand requirement as established in case law preceding enactment of the statute.  Consequently, we reverse and remand the case for further proceedings.

BACKGROUND

According to the allegations in the amended complaint, Melvin Davis Sr., the husband of Dorothy and the father of Kaye, Melvin Jr. and Rex, founded and owned Melvin L. Davis Oil Company.  He sold the company stock to his three children.  Melvin and Dorothy also owned real estate that the oil company leased.  Melvin and Dorothy formed Woodside Properties as a limited liability company to take ownership of this real estate.  Melvin and Dorothy intended to

_____

[1] Judge Nathan C. Lee authored a memorandum opinion ruling against Davis.  Judge James F. D'Alton, Jr. entered the final order in the case.

establish a vehicle through which they would receive income from Davis Oil's rental of these properties. The operating agreement for Woodside Properties appoints MKR Development, LLC as the manager of Woodside Properties. Under MKR's operating agreement, Rex, Melvin Jr., and Kaye are its managers.

Dorothy, who presently owns 72 percent of Woodside Properties, alleges that as of December 31, 2011, Woodside Properties should have received $1,374,147 in rent under the lease. Instead, she alleges, the bank account established for Woodside Properties had a balance of $35,000. She also asserts that funds that should have gone to Woodside Properties were used for improper purposes. When she asked Melvin Jr. and Rex for payment of funds due, they refused.[2] They also refused to provide an accounting.

On May 13, 2014, Dorothy filed a complaint, which she later amended, against MKR Development, LLC and her two sons, Melvin Jr. and Rex, as well as Woodside Properties, LLC. She alleges *inter alia* that MKR and her sons, as managers, had breached their fiduciary duties towards Woodside Properties, were wasting corporate assets, and unjustly enriching themselves. She asked for MKR to be removed as manager of Woodside Properties, and for a decree imposing a constructive trust and requiring an accounting.

Significantly, the amended complaint states that

> Mrs. Davis did not make demand on MKR, Mel, and/or Rex to
> bring this action on behalf of Woodside Properties because such
> demand would have been a futile, wasteful, and useless act as they
> were the parties who authorized and ratified the alleged wrongful
> conduct complained of herein and were the direct beneficiaries
> thereof, and are incapable of making an independent and
> disinterested decision to institute and vigorously prosecute this
> action.

---

[2] In a separate proceeding, Kaye was dissociated from MKR.

2

In response, the defendants filed a plea in bar and demurrer, alleging, among other things, that the complaint was barred because Dorothy had not made a "proper demand as required by" Code § 13.1-1042. The court agreed, granted the plea in bar, and dismissed the complaint on that basis.[3] Dorothy appeals from this decision.

ANALYSIS

The question before us is one of statutory construction, which we review de novo. *Perreault v. Free Lance-Star*, 276 Va. 375, 384, 666 S.E.2d 352, 357 (2008).

The derivative form of action permits an individual shareholder to bring "suit to enforce a *corporate* cause of action against officers, directors, and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534 (1970). Devised as a suit in equity, the purpose of the derivative action is to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949). *See also Simmons v. Miller*, 261 Va. 561, 573, 544 S.E.2d 666, 674 (2001) ("A derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder.").

To prevent abuse of this remedy, however, equity courts required the shareholder to "allege and prove that a request or demand has been made upon the board of directors, or other body managing the corporation that they institute proceedings on the part of the corporation against the wrong-doers, and their refusal to do so after reasonable request, or demand." *Mount*

---

[3] The circuit court dismissed the amended complaint without prejudice. Dorothy challenges this ruling, notwithstanding the fact that the dismissal was without prejudice, out of a concern that opposing counsel would argue on refiling that the statute of limitations bars the refiled action.

3

*v. Radford Trust Co.*, 93 Va. 427, 431, 25 S.E. 244, 245 (1896). In the alternative, the stockholder could

> allege such a state of facts as will show that the defendants whom he charges with the wrong doing constitute a majority of the board of directors, or managing body at the time of the suit, or that they, or a majority of them, are under the control of the defendant wrong-doers, so that the court may infer that they would refuse to bring such suit; or he must allege such facts in his pleading as will show that it is reasonably certain that a suit by the corporation would be impossible, and that a demand to sue would be useless.

*Id. See also Virginia Passenger & Power Co. v. Fisher*, 104 Va. 121, 126-27, 51 S.E. 198, 200 (1905). This became known as the "futility exception."

Effectively codifying this case law, Code § 13.1-1042 previously provided that a plaintiff could bring a derivative action "if members or managers with authority to do so have refused to bring the action or if an effort to cause those members or managers to bring the action is not likely to succeed." 1991 Va. Acts ch. 168 (enacting Virginia Limited Liability Company Act, Code § 13.1-1000 through -1069). In 2011, however, the General Assembly amended the statute, in pertinent part, as follows:

> *A.* A member ~~may bring an action in the right of a limited liability company to recover a judgment in its favor to the same extent that a shareholder may bring an action for a derivative suit under the Stock Corporation Act, Chapter 9 (§ 13.1-601 et seq.) of this title. Such action may be brought if members or managers with authority to do so have refused to bring the action or if an effort to cause those members or managers to bring the action is not likely to succeed. The derivative action may not be maintained if it appears that the plaintiff does not~~ *shall not commence or maintain a derivative proceeding unless the member* fairly and adequately ~~represent~~ *represents* the interests of the ~~members and the~~ limited liability company in enforcing the right of the limited liability company *and is a proper plaintiff pursuant to § 13.1-1043.*
>
> *B. No member may commence a derivative proceeding until:*
> *1. A written demand has been made on the limited liability company to take suitable action; and*

4

> *2. Ninety days have expired from the date delivery of the demand was made unless (i) the member has been notified before the expiration of 90 days that the demand has been rejected by the limited liability company or (ii) irreparable injury to the limited liability company would result by waiting until the end of the 90-day period.*
>
> *C. If the limited liability company commences a review and evaluation of the allegations made in the demand or complaint, the court may stay any derivative proceeding for such period as the court deems appropriate.*

2011 Acts ch. 379 (newly enacted text in italics, deleted text stricken).

MKR argues that this amendment abolished the futility exception. As it presently reads, MKR notes, Code § 13.1-1042(B) requires a member to make a demand and wait 90 days prior to commencing a derivative suit. A longstanding canon of construction supports this view: "[a]s a general rule, a presumption exists that a substantive change in law was intended by an amendment to an existing statute." *Virginia-American Water Co. v. Prince William Cty. Serv. Auth.*, 246 Va. 509, 517, 436 S.E.2d 618, 622-23 (1993). There are two significant obstacles, however, to what might otherwise be a straightforward interpretation of Code § 13.1-1042.

The first of these is that Code § 13.1-1044 sets forth pleading requirements for derivative suits. It states that "[i]n derivative action, the complaint shall set forth with particularity the effort of the plaintiff to secure commencement of the action by a member or manager with the authority to do so *or the reasons for not making the effort*." (Emphasis added.) As Dorothy points out, if Code § 13.1-1042 categorically requires a demand, this language in Code § 13.1-1044 would be superfluous. We ordinarily resist a construction of a statute that would render part of a statute superfluous. "Every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *City of Richmond v. Virginia Elec. & Power Co.*, 292 Va. 70, 75, 787 S.E.2d 161, 164 (2016) (quoting *Lynchburg Div. of Soc.*

*Servs. v. Cook*, 276 Va. 465, 483, 666 S.E.2d 361, 370 (2008)). *See also Dilliard v. Tomlinson*, 15 Va. (1 Munf.) 183, 205 (1810) ("[A] statute is to be so construed, that no clause, sentence or word shall be void, superfluous, or insignificant.").

In addition, Code § 13.1-1001.1(A) provides that "the principles of law and equity supplement this chapter" except where they are "displaced by particular provisions of this chapter." The text of Code § 13.1-1042 as it presently exists does not expressly disclaim the futility exception. It is silent on the subject. Moreover, since derivative actions generally, and the futility exception specifically, developed on the equity side of the court, *Cohen*, 337 U.S. at 548, they constitute "principle[s] of . . . equity" under Code § 13.1-1001.1(A). Although derivative actions developed in connection with traditional corporations rather than limited liability companies, such a derivative action is closely analogous to a derivative action involving an LLC. By referring to "principles of law and equity [which] supplement this chapter," Code § 13.1-1001.1(A) embraces within its scope the futility exception, which has long been part of our law. *See, e.g.*, *Mount*, 93 Va. at 431, 25 S.E. at 245.

The General Assembly's 2011 enactment was not a futile gesture. The amendment reorganized and streamlined the statute. It created subsections A, B, and C, added a specific timeline in subsection B, and expressly provided the court with the power to stay an action in subsection C. With respect to the futility exception, the 2011 amendment had the effect of replacing an express textual provision in Code § 13.1-1042 with an incorporation by reference of a rule drawn from case law.[4]

---

[4] We do not suggest that any time a statute is repealed, the repeal will invariably revive default principles developed through case law prior to the adoption of the statute. Rather, our holding is derived from the language of Code § 13.1-1044, which presupposes the continued existence of the futility exception, as well as the textual provision found in Code § 13.1-1001.1(A),

The combined force of the textual provisions of Code § 13.1-1001.1(A) and Code § 13.1-1044 lead us to conclude that the General Assembly did not abrogate the futility exception when it amended Code § 13.1-1042 in 2011.  Therefore, the circuit court erred in dismissing Dorothy's complaint.[5]

Finally, we are aware of the summary that accompanied the 2011 bill, which can be found on the online Legislative Information System.[6]  It indicates that the bill may have been intended to abolish the futility exception.  Pursuant to Code § 1-247, however, the General Assembly has set forth the following canon of construction:

> Any legislative summary associated with a bill, joint resolution or resolution, including any summary appearing on the face of such legislation, shall not constitute a part of the legislation considered, agreed to, or enacted, and shall not be used to indicate or infer legislative intent.

---

which expressly provides that "the principles of law and equity supplement this chapter" except where they are "displaced by particular provisions of this chapter."

[5] Although the parties discuss the "common law" of derivative actions, they do not suggest that the futility exception was part of the common law of England.  *See Ross*, 396 U.S. at 534 (noting that "[t]he common law refused . . . to permit stockholders to call corporate managers to account in actions at law" and the possibility of abuse this created following the advent of modern corporations led courts early in the 19th century to provide relief through an action in equity).  It can make a difference whether a legal principle originated in the common law of England at the time the Commonwealth of Virginia established its sovereignty or whether the legal principle originated thereafter.  The repeal of a statute abrogating the common law of England will have the effect, absent manifest contrary legislative intent, of reviving common law rules. *See Mosley v. Brown*, 76 Va. 419, 424 (1882) (the effect of the repeal of the statute was "to completely restore the common law remedy" unless the inference of intent to restore is repelled by the language of the repealing statute); *Ins. Co. v. Barley's Administrator*, 57 Va. (16 Gratt.) 363, 384 (1863) ("When a statute changing the common law is repealed, the common law is restored to its former state.").  This view is consistent with Code § 1-200.  No such rule applies with respect to case law developments not rooted in the common law of England.

[6] 2011 Acts ch. 379 (summary as passed), http://leg1.state.va.us/cgi-bin/legp504.exe?ses=111&typ=bil&val=ch379 (last visited April 27, 2018).

Given this unambiguous legislative command, we cannot consider the bill summary in our construction of the statute.[7]

## CONCLUSION

We will reverse the judgment below and remand with instructions to reinstate the plaintiff's complaint.

*Reversed and remanded.*

---

[7] In light of our conclusion that the 2011 amendments to Code § 13.1-1042 did not abrogate the futility exception, we need not address the plaintiff's remaining arguments.