PRESENT: All the Justices

BOARD OF SUPERVISORS
OF FAIRFAX COUNTY

OPINION BY
v. Record No. 171483                                  JUSTICE S. BERNARD GOODWYN
                                                                December 13, 2018
DOUGLAS A. COHN, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Thomas P. Mann, Judge

In this appeal, we consider whether the Circuit Court of Fairfax County erred when it

held that Code § 15.2-2307(D) creates a vested right to an originally illegal use of a building or

structure, after the owner has paid taxes to the locality for that building or structure for 15 years

or more.

I. BACKGROUND

Douglas A. Cohn and Kathryn J. Cohn (the Cohns) own real property located in McLean,

Virginia (the Property). The Property is a lot located in an R-1 zoning district, which is zoned

for "not more than one (1) dwelling unit on any one (1) lot," under Fairfax County Zoning

Ordinance § 2-501. The Cohns have a house (Main House), which was built in 1962; a detached

garage (Garage), which was built in 1963; and a garden house (Garden House), which was built

in 1972, located on the Property.

On August 4, 2016, the Fairfax County Zoning Administrator issued a Notice of

Violation (NOV) to the Cohns regarding the Property. The NOV claimed that the Cohns were in

violation of Zoning Ordinance § 2-501 because an inspection revealed that the Garage and the

Garden House "have been converted to dwellings," resulting in "three (3) complete and separate dwellings" on the Property.[1]

The NOV instructed the Cohns to remedy the violation by: (1) removing the "kitchens located in the garage and garden house dwellings," as well as "all other appliances and accoutrements used or intended for use for cooking or eating," and "all plumbing, electrical, and gas connections and piping" from those structures, (2) "[a]pplying for and obtaining approval . . . for a valid demolition permit for the removal of all electrical circuits, plumbing fixtures and piping and natural gas piping systems which were installed [in the Garage and Garden House]," and (3) "ceasing, on a permanent basis, the use of all but one (1) dwelling unit, on the property, and restoring the [Garage and Garden House] to their original [permitted] use."

### A. BOARD OF ZONING APPEALS

The Cohns appealed the NOV to the Fairfax County Board of Zoning Appeals (BZA) on September 2, 2016. They contended that the Garage and Garden House were "grandfathered" because both were built as dwelling units—the Garage having been built with a connection to the septic tank in the Main House, and the Garden House having been built with its own septic tank—and no zoning violations had been issued since their construction. The Cohns contended that while they were renting the Main House in 1997, before they purchased the Property in

---

[1] Part 3 of Article 20 of the Fairfax County Zoning Ordinance defines dwelling as, "A building or portion thereof . . . designed or used for residential occupancy." Zoning Ordinance § 20-300. Additionally, Part 3 of Article 20 of the Fairfax County Zoning Ordinance defines a dwelling unit as:

> One (1) or more rooms in a residential building or residential portion of a building which are arranged, designed, used, or intended for use as a complete, independent living facility which includes provisions for living, sleeping, eating, cooking and sanitation.

*Id.*

2

1998, the Garage and Garden House were also being rented, and the previous owner of the Property had informed them that the three units "had been rented to other people long before."

On January 17, 2017, the Zoning Administrator provided a staff report (Report) articulating her position to the BZA concerning the Cohns' appeal. The Report noted that building permits were issued in 1963 and 1972 for the Garage and Garden House, respectively, and that both permits specifically noted that "there are no kitchens or bathrooms approved for the structure." The Report also explained that the permits designated the use of the first structure as a "garage" and the second structure as "a 'greenhouse for own private use.'" Copies of the permits were attached to the Report.

The Report further explained the Zoning Administrator's position that all kitchen components must be removed from the Garage and Garden House because the Cohns had "illegally established two dwelling units within the detached structures" on the Property, and "the requirement to remove all components that comprise an additional kitchen that creates a separate dwelling unit is consistent with previous determinations by the Zoning Administrator and various court orders." The Zoning Administrator attached several circuit court decisions from other cases in which the court found a violation of Zoning Ordinance § 2-501, and ordered the property owners to "reduce the number of dwelling units to one by," among other things, removing excess kitchens, sealing excess utilities, and removing excess plumbing, electrical, and gas connections that serviced the excess dwelling units.

The BZA held a hearing on March 1, 2017. During the hearing, Suzanne Gilbert (Gilbert), an assistant to the Zoning Administrator, testified on behalf of the Board of

Supervisors of Fairfax County (the Board).[2]  In addition to noting the information in the Report, Gilbert explained that in 2008, the Fairfax County Department of Tax Administration (Department of Tax Administration) "conduct[ed] a neighborhood walk, [] to note exterior changes, and based on a conversation with the [Cohns]," learned of the kitchens and bathrooms located within the Garden House and Garage.  She stated that the Department of Tax Administration thereafter began designating the Garage and Garden House as dwellings "purely for identification purposes only."  The tax rate and the amount paid for taxes did not change as a result of the new designations.

In response, the Cohns admitted that neither the Garage nor the Garden House "conform to the original building permits," and that it was likely the use of the Garage and the Garden House as dwellings "was established unlawfully."  They also agreed that the Department of Tax Administration used a mass assessment approach when it assessed the Property for taxes, and that the value assessed did not change after the Garage and Garden House were designated as dwellings by the Department of Tax Administration.

However, the Cohns argued that because they had paid taxes on the Property for more than 15 years, Code § 15.2-2307(D) protects the buildings and structures on the Property and their use as dwellings from being declared unlawful.  The Cohns noted that in the tax assessments, the value assessed on the Property did not change regardless of how the Garage and Garden House were designated, which proves they paid taxes on those structures before and after they were designated as dwellings by the Department of Tax Administration.

---

[2] Fairfax County Zoning Ordinances are administered by the Zoning Administrator, who serves on behalf of the Board of Supervisors.  Zoning Ordinance § 18-101.

On March 7, 2017, the BZA issued a letter upholding the determination of the Zoning Administrator.

## B. CIRCUIT COURT

On March 28, 2017, the Cohns appealed the decision of the BZA to the circuit court. The circuit court held a hearing on June 30, 2017.

During the hearing, the Board pointed out that no use, occupancy, or building permit issued by Fairfax County authorized the use of either the Garage or the Garden House as a dwelling. It also argued that because the Garden House and Garage were not taxed as separate dwellings until 2008, less than fifteen years prior to the NOV, the exception in Code § 15.2-2307(D)(ii) could not apply. In contrast, the Cohns argued that they had paid taxes on all the structures on the Property since they purchased the Property, and Code § 15.2-2307(D)(ii) did not require the structures to be taxed according to their use. They also argued that the record demonstrates that the Department of Tax Administration taxes land and "the improvements for all of the buildings," with all of the improvements being assessed an "aggregate value." Thus, the Cohns contended that Code § 15.2-2307(D)(ii) prevented Fairfax County from declaring their use of the buildings and structures on the Property to be illegal.

On July 20, 2017, the circuit court issued its letter opinion, reversing the decision of the BZA. The circuit court reasoned that Code § 15.2-2307(D)(ii) protects "nonconforming structures from future zoning amendments so long as taxes have been paid on the property," and found that, since 1998, the Garage and Garden House had been "occupied as dwelling units," and the Cohns had "paid taxes on the Property as assessed by Fairfax County." Accordingly, the court concluded that Code § 15.2-2307(D)(ii) protects the Cohns from having to "destroy or otherwise modify the structures." The circuit court held that the Property, "including all three

5

nonconforming structures, are protected under [Code § 15.2-2307(D)(ii)]," and entered an order

on July 20, 2017, memorializing its ruling. The circuit court denied the Board's subsequent

motion to reconsider.

The Board appeals. This Court granted one assignment of error:

The trial court erred in holding that § 15.2-2307(D) protected the Cohns' illegal
use of their garden house and garage.

## II. ANALYSIS

The Board argues that the circuit court erred when it reversed the decision of the BZA. It

contends that Code § 15.2-2307(D)(ii) does not protect illegal uses of structures and buildings,

and that the circuit court failed to properly interpret the plain language of the statute. We agree.

"Under well-established principles, an issue of statutory interpretation is a pure question

of law" this Court reviews de novo. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va.

96, 104 (2007).

> When construing a statute, our primary objective is to ascertain and give effect to
> legislative intent, as expressed by the language used in the statute. When the
> language of a statute is unambiguous, we are bound by the plain meaning of that
> language. And if the language of the statute is subject to more than one
> interpretation, we must apply the interpretation that will carry out the legislative
> intent behind the statute.

*Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (citations and

internal quotation marks omitted).

This Court "resist[s] a construction of a statute that would render part of a statute

superfluous. Every part of a statute is presumed to have some effect and no part will be

considered meaningless unless absolutely necessary." *Davis v. MKR Dev., LLC*, 295 Va. 488,

494 (2018) (citation and internal quotation marks omitted). We consider a statute in its entirety

"to place its terms in context to ascertain their plain meaning . . . because it is our duty to

interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate

6

the legislative goal." *Cuccinelli*, 283 Va. at 425 (citation and internal quotation marks omitted).

Accordingly, we also generally consider as *in pari materia*, statutes related to the same subject

matter, to "make the body of the laws harmonious and just in their operation." *Lucy v. County of*

*Albemarle*, 258 Va. 118, 129-30 (1999).

Zoning ordinances may regulate, restrict, prohibit, and permit *the use* of land, buildings,

and structures, and the size, height, area, location, and construction of structures and buildings.

*See* Code § 15.2-2280. Thus, zoning issues may concern the use of land, structures, and

buildings, as well as the compliance of the actual structures and buildings placed on land.

The General Assembly enacted Code § 15.2-2307 to prevent the impairment of vested

rights in a landowner's use of their property. The statute distinguishes between the rights to the

use of land, structures, and buildings, and the right to maintain buildings and structures on land.

The first subsection of Code § 15.2-2307 concerns the vesting of the right to use of land.[3]

It provides that a significant affirmative governmental action allowing the use of land in a

particular way may result in the beneficiary receiving a vested right to use that land in that

manner. Code § 15.2-2307(B) lists examples of actions that may be considered significant

affirmative governmental acts, such as the approval of a rezoning application, granting a special

use permit, and approving a variance.

---

[3] Code § 15.2-2307(A):

Nothing in this article shall be construed to authorize the impairment of any vested right. . . . . [A] landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.

7

"[W]hen vested rights accrue to a landowner as the result of a significant affirmative governmental act, the rights that vest are only those that the government affirmatively acts upon and the evidence to support the claim to those rights must be clear, express, and unambiguous." *Hale v. Board of Zoning Appeals*, 277 Va. 250, 274 (2009). The Cohns agree that no use, building, or other permit that approved the use of the Garage or the Garden House as a dwelling has ever been issued by Fairfax County. The building permits issued for the Garage and the Garden House show that no such approval was granted then. The Cohns have not shown that they acquired a vested right to use of the Garage and the Garden House as dwellings through any subsequent significant affirmative governmental act.

Code § 15.2-2307(C) concerns a landowner's vested right to maintain nonconforming "land, buildings, and structures, *and the uses thereof.*" (Emphasis added.) A nonconforming use of a building or structure is, generally, "a *lawful* use [of a building or structure] existing on the effective date of the zoning restriction and continuing since that time in non-conformance to the ordinance." *Hardy v. Board of Zoning Appeals*, 257 Va. 232, 235 (1999) (citations and internal quotation marks omitted). "A nonconforming use may not be established through a use of land which was commenced or maintained in violation of a zoning ordinance." *Id.* Landowners are entitled to maintain nonconforming buildings, structures, and uses. *Hale*, 277 Va. at 271 ("It is well established in the law that as to an existing use, absent condemnation and payment of just compensation, the landowner has the right to continue that use even after a change in the applicable zoning classification causes the use to become nonconforming.") (citing *Board of Supervisors of Fairfax County v. Board of Zoning Appeals*, 271 Va. 336, 348 (2006)).

Under Code § 15.2-2307(C), a locality may provide that nonconforming "land, buildings, and structures and the uses thereof" may only continue "so long as the then existing or a more

8

restricted use continues" and "the buildings or structures are maintained in their then structural condition." Therefore, Code § 15.2-2307(C) acknowledges the vesting of the right to maintain a nonconforming building, structure, or use, but also provides that if the structural condition of the building is altered, the vested right to the nonconforming use is lost. Even if the locality has issued a business license for the nonconforming use and the licensee has paid taxes for the use for more than 15 years, the landowner must apply for rezoning or a special use permit to continue the nonconforming use.[4]

The use of the Cohns' Garage and Garden House as dwellings is not a nonconforming use because the structures were built after the effective date of the zoning restriction. The Garage and Garden House were not permitted by the County to be used as dwellings but rather as a garage and a garden house. The permits actually note that "there are no kitchens or bathrooms approved for the structures." The kitchens and bathrooms added to the Garage and

---

[4] Code § 15.2-2307(C):

> A zoning ordinance may provide that land, buildings, and structures and the uses thereof which do not conform to the zoning prescribed for the district in which they are situated may be continued only so long as the then existing or a more restricted use continues and such use is not discontinued for more than two years, and so long as the buildings or structures are maintained in their then structural condition; and that the uses of such buildings or structures shall conform to such regulations whenever, with respect to the building or structure, the square footage of a building or structure is enlarged, or the building or structure is structurally altered as provided in the Uniform Statewide Building Code (§ 36-97 et seq.). If a use does not conform to the zoning prescribed for the district in which such use is situated, and if (i) a business license was issued by the locality for such use and (ii) the holder of such business license has operated continuously in the same location for at least 15 years and has paid all local taxes related to such use, the locality shall permit the holder of such business license to apply for a rezoning or a special use permit without charge by the locality or any agency affiliated with the locality for fees associated with such filing. Further, a zoning ordinance may provide that no nonconforming use may be expanded, or that no nonconforming building or structure may be moved on the same lot or to any other lot which is not properly zoned to permit such nonconforming use.

9

Garden House were admittedly installed in violation of the zoning ordinance. Thus, the Cohns do not claim any vested right to use the Garage and Garden House as dwellings under Code § 15.2-2307(C).

However, the Cohns claim that the circuit court correctly held that Code § 15.2-2307(D) protects both the physical structure of the Garage and Garden House as well as their use as dwellings. They argue that the plain language of Code § 15.2-2307(D)(ii) protects all of a building's or structure's nonconforming properties, including its use, when the owner of the building or structure has paid taxes on such building or structure for more than the previous 15 years.

Code § 15.2-2307(D) states:

> Notwithstanding any local ordinance to the contrary, if (i) the local government has issued a building permit, the building or structure was thereafter constructed in accordance with the building permit, and upon completion of construction, the local government issued a certificate of occupancy or a use permit therefor, or (ii) *the owner of the building or structure has paid taxes to the locality for such building or structure for a period of more than the previous 15 years, a zoning ordinance shall not provide that such building or structure is illegal and subject to removal solely due to such nonconformity.* Such building or structure shall be nonconforming. A zoning ordinance may provide that such building or structure be brought in compliance with the Uniform Statewide Building Code, provided that to do so shall not affect the nonconforming status of such building or structure.

(Emphasis added.)

Code § 15.2-2307(D) "demonstrates the General Assembly's intent to forbid local governments from declaring *an existing building or structure illegal* after taxes have been paid for 15 years or more." *Lamar Co., LLC v. City of Richmond*, 287 Va. 348, 352 (2014) (emphasis added). It does not mention the vesting of the right to use a building or structure in a particular way.

10

The terms "building" and "structure" are not defined within Title 15.2 of the Code.  The plain meaning of a "building" is "*a thing* built" or

> *a constructed edifice* designed to stand more or less permanently, covering a space of land, usually covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.

Webster's Third New International Dictionary 292 (2002) (emphasis added).  Likewise, a "structure" is "*something* constructed or built."  *Id.* at 2267 (emphases added).  Title 36 of the Code, which governs the Uniform Statewide Building Code, similarly defines "building" and "structure" to mean "a combination of any materials . . . having a roof to form a structure," and "an assembly of materials forming a construction," respectively.  Code § 36-97.

Code § 15.2-2307(D)(ii) dictates that a building or structure may not be declared illegal or subject to removal after the owner of the building or structure has paid taxes to the locality for such building or structure for more than the previous 15 years.  Thus, pursuant to the plain meaning of the statute's language, only the structures of the Garage and Garden House are protected by Code § 15.2-2307(D)(ii).  Code § 15.2-2307(D) does not provide protection for the *uses* of those structures.  While a "building" or "structure" may be constructed *for* a use or purpose, the use or purpose is not the building or structure itself.  By its express terms, the vested right preserved by subsection (D) is limited to a prohibition regarding the removal of a building or structure.

Additionally, to read the terms "building" or "structure" to include their uses would unnecessarily render the term "uses" superfluous in subsection (C), a result which this Court avoids in statutory interpretation.  *Davis*, 295 Va. at 494.  Considering that the General Assembly specifically delineated "buildings," "structures," and "the uses thereof" in subsection

11

(C), and conspicuously omitted any reference to "the uses thereof" in subsection (D), the legislature did not intend to protect the uses of a structure or building under the latter subsection. Accordingly, we hold that Code § 15.2-2307(D)'s references to "building" and "structure" concern the edifices themselves, not their uses, and only protects the building or structure itself from removal.

The Board did not attempt to have the structures of the Garage or the Garden House removed or declared illegal. The purported violation only concerned the use of those structures. Code § 15.2-2307(D)(ii) does not protect the Cohns' use of the Garage and Garden House as dwelling units and, therefore, does not prevent the County from requiring the Cohns to cease their illegal use of the structures and to remove the kitchens and other accoutrements that support the illegal use of the structures as dwelling units. The circuit court erred when it reversed the decision of the BZA.

### III. CONCLUSION

Accordingly, for the foregoing reasons, we will reverse the judgment of the Circuit Court of Fairfax County, reinstate the determination of the Fairfax County Board of Zoning Appeals, and enter final judgment for the Board of Supervisors of Fairfax County.

*Reversed and final judgment.*