COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia


EMMANUEL WORSHIP CENTER, ET AL.

                                                            OPINION BY
v.        Record No. 0409-23-2                    JUDGE STUART A. RAPHAEL
                                                          FEBRUARY 13, 2024

THE CITY OF PETERSBURG


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

Lenard Myers, II (Fortress Proprietas, P.C., on briefs), for
appellants.

Christopher K. Jones (N. Reid Broughton; Andrew R. McRoberts;
Sands Anderson PC, on brief), for appellee.


The Emmanuel Worship Center ("Church") appeals the trial court's determination that its

property at 214 Grove Avenue in the City of Petersburg is not exempt from property taxes. The

property sits next to the Church's main worship center, which the City does not dispute is

entitled to a constitutional and statutory exemption as "[r]eal estate . . . owned and exclusively

occupied or used by churches or religious bodies for religious worship." Va. Const. art. X,

§ 6(a)(2); Code § 58.1-3606(A)(2) ("exclusively occupied or used for religious worship"). On

the Church's previous appeal, the Supreme Court remanded the case for the trial court to

determine "whether the property in question was used for religious worship as defined in Code

§ 58.1-3606, and consequently whether [the Church] owed any delinquent taxes for the

property." *Emmanuel Worship Ctr. v. City of Petersburg*, 300 Va. 393, 405 (2022).

At the remand hearing, the trial court struck the Church's evidence on that question.

Because the Church had rented a portion of the property to a commercial tenant, the trial court

determined that the property was not used "exclusively" for religious worship. But the trial court

denied the City's request for attorney fees under Code §§ 58.1-3965, -3969, and -3974. The

court found that the City was entitled only to the attorney fees incurred as of when the Church

redeemed the property—fees the Church had already paid—not attorney fees incurred thereafter.

Finding no error in either ruling, we affirm the judgment.

BACKGROUND[1]

The Supreme Court set the stage for this case in *Emmanuel Worship Center*. *See* 300 Va.

at 396-98. In May 2019, the Circuit Court for the City of Petersburg entered a decree ordering

the sale of the Church's property at 214 Grove Avenue to cover $29,288.95 in "delinquent real

estate taxes . . . through June 30, 2015, and penalties and interest thereon through April 15,

2019." *Id.* at 397. The Church failed to note an appeal from that decree. *Id.* Instead, it paid the

City $114,059.10 "under protest," thereby staving off the tax sale and redeeming the property by

paying the "accumulated taxes, penalties, interest, and [attorney] fees." *Id.* Within six months of

the final judgment, the Church filed a bill of review, asking the trial court to reverse its finding

that the Church owed back taxes and to order the Church's moneys returned. *Id.* The trial court

dismissed the bill of review, finding that a tax-sale proceeding is an action at law and that a bill

of review (which lies only to challenge a decree in equity) was unavailable. *Id*. at 398.

The Supreme Court reversed. *Id.* at 400. The Court found that a proceeding to sell land

for delinquent taxes sounds in equity, making a bill of review proper if filed within six months of

the final decree. *Id*. at 399-400. The Court further held that the Church's bill of review properly

alleged an error of law on the face of the record. *Id*. at 400-04. The Court remanded the case for

---

[1] "When reviewing a trial court's decision to grant a motion to strike the plaintiff's evidence, we view the evidence presented at trial in the light most favorable to the plaintiff and accord the plaintiff the benefit of any inferences that may be fairly drawn from the evidence." *Curtis v. Highfill*, 298 Va. 499, 502-03 (2020). Accordingly, we present the facts in the light most favorable to the Church.

- 2 -

the trial court to determine "whether the property in question was used for religious worship as defined in Code § 58.1-3606." *Id.* at 405.[2]

On remand, the trial court conducted a bench trial at which the Church called five witnesses. The evidence established that the Church was founded in 1982. The building in which it conducts its worship services is located at 236 Grove Avenue. That building also houses the fellowship hall and the pastor's office. The Church's annual income from tithings and offerings is about $120,000.

The Church bought the adjacent property at issue here—214 Grove Avenue—in 2004. At that time, the Wooden Leg Van Shop had been leasing a portion of the property from the previous owner. Since 1982, Wooden Leg has been in the business of tinting automobile and residential windows for profit. The Church agreed to continue the Wooden Leg lease at a monthly rental rate of $500. The rent is paid to a management company that deducts a $50 fee and passes the remaining $450 per month to the Church, or $5,400 annually. The Church deposits the rent in its bank account and uses the moneys toward the Church's "business matters" and "rainy day fund." Besides housing Wooden Leg's main shop, the property houses several outbuildings also used exclusively by Wooden Leg. In addition, Wooden Leg's owner, James Wareheim, owns various cars and RVs that he parks on the property. He testified that a gate controls vehicle access to and from the undeveloped portions of the property.

Wareheim operates the Wooden Leg shop from 8:00 a.m. to 4:30 p.m. on weekdays. He used to work on weekends too but, in recent years, operates only occasionally for a half-day on Saturdays. Wooden Leg's revenues have been down in recent years, averaging $20,000 to

---

[2] At oral argument in the Supreme Court, the Church was asked, "how do we know on this record that the property was in fact used for worship or a minister's residence, as opposed to something else?" The Church responded, "there was never any evidence entertained concerning how the property was actually being used. It was proffered that it was being used exclusively for religious purposes and it was owned by a church . . . ."

$25,000. Although Wooden Leg's mailing address is 214A, "214 Grove Avenue" is a single parcel for tax-assessment purposes.

The 214 Grove Avenue property also contains a brick building used by the Church that occupies less than half the square footage of the property. The Church's senior pastor testified that the Church has never held worship services there. The property has also never been used "as a residence for a minister or a pastor or anybody else associated with" the Church. Nor has the property ever been used for "outdoor worship or church services."

But the Church has used that building for various purposes, such as providing "scouting" outreach, a food pantry, and clothing donations. A men's Bible study group met there approximately once a month until the COVID-19 pandemic in 2020. The building houses the office of one of the Church's elders.[3] And the Church has used the building to conduct a "Yeshiva" or "Sunday school" for children.[4] The senior pastor characterized several of the activities conducted in the building as within the scope of what he considers to be "worship."

The trial court granted the City's motion to strike the Church's evidence at the close of the Church's case-in-chief. The court read Article X, Section 6(a)(2) of the Constitution and Code § 58.1-3606(A)(2) to require the Church to prove that it used the 214 Grove Avenue property "exclusively" for worship or for the residence of clergy. The court found that the exclusiveness requirement was not satisfied because "portions of this property are leased to the exclusion of the church." The court therefore dismissed the bill of review.

The trial court denied the City's request for attorney fees for defending the bill of review. The final order indicated that fees were denied because the Church had redeemed the property

---

[3] The remaining offices are in the Church's main building at 236 Grove Avenue.

[4] The Church also "recently" started holding cheerleading and "dance ministry" classes there, but the record is unclear if that was before June 30, 2015, the end of the tax-assessment period at issue.

- 4 -

before it was sold, in accordance with Code § 58.1-3965(B), and the Church had paid the attorney fees that were then owing.

ANALYSIS

Assigning error to the trial court's granting the motion to strike, the Church argues that the trial court misinterpreted the exclusivity requirement in Code § 58.1-3606(A)(2). That issue of statutory interpretation presents a question of law that we review de novo. *Gloss v. Wheeler*, ___ Va. ___, ___ (May 18, 2023). The City assigns cross-error to the trial court's failure to award attorney fees under Code §§ 58.1-3965, -3969, and -3974. "Whether the trial court was statutorily required to award attorney[] fees to" the City also "presents a question of statutory interpretation" that we review "de novo." *Berry v. Fitzhugh*, 299 Va. 111, 117 (2020).

*A. The Church failed to prove the exemption it claimed for 214 Grove Avenue.*

*1. The constitutional and statutory scheme*

Under the Virginia Constitution of 1971, "All property, except as hereinafter provided, shall be taxed." Va. Const. art. X, § 1. In other words, "[t]he general policy in the Commonwealth is to tax all property." *Mariner's Museum v. City of Newport News*, 255 Va. 40, 44 (1998). "But the Constitution creates certain exemptions" in Article X, Section 6(a), and it "authorizes the General Assembly to establish others" in Section 6(b). *Id.* The General Assembly is also "permitted [by Section 6(c)] to restrict or condition, in whole or in part, but not extend, any or all of the exemptions created in the Constitution." *Id.*

When the General Assembly has exempted property from taxation, it has done so either by designation or by classification. Exemption by designation specifies the entities to be exempted. *See* Code § 58.1-3607(A). Exemption by classification requires the taxpayer to qualify for the exemption by fitting within the class of entities exempted. *See* Code § 58.1-3606(A).

Under the 1902 Constitution, tax "exemptions were liberally construed." *Children, Inc. v. City of Richmond*, 251 Va. 62, 66 (1996). In 1969, however, the Commission on Constitutional Revision recommended switching to a strict-construction rule. *See Constitution of Virginia: Report of the Commission on Constitutional Revision* 306 (1969). "The General Assembly adopted [Article X, Section 6(f) of the new constitution] in the precise language proposed by the Commission." 2 A.E. Dick Howard, *Commentaries on the Constitution of Virginia* 1088 (1974). Article X, Section 6(f) of the 1971 Constitution now provides:

> Exemptions of property from taxation as established or authorized hereby shall be strictly construed; provided, however, that all property exempt from taxation on the effective date of this section shall continue to be exempt until otherwise provided by the General Assembly as herein set forth.

Va. Const. art. X, § 6(f).

Section 6(f) of the current constitution thus "prescribes a rule of strict construction to apply prospectively to exemptions 'established or authorized' by the new constitution." *Manassas Lodge No. 1380, Loyal Ord. of Moose, Inc. v. Cnty. of Prince William*, 218 Va. 220, 223 (1977). "Any doubt on the question whether an exemption applies must be resolved in favor of the taxing authority, and the burden is upon the taxpayer to show that he comes within the terms of the exemption." *Roberts v. Bd. of Supervisors*, 249 Va. 2, 6 (1995). So "[w]hen a tax statute is susceptible to two constructions, one granting an exemption and the other denying it, the latter construction is adopted." *LZM, Inc. v. Va. Dep't of Tax'n*, 269 Va. 105, 110 (2005).[5]

Article X, Section 6(a)(2) of the Constitution created a baseline exemption by classification for religious-use properties: "Real estate and personal property owned and

---

[5] The liberal-construction rule, however, continues to apply to tax exemptions created before July 1, 1971, whether by classification (*see* Code § 58.1-3606(B)) or by designation (*see* Code § 58.1-3607(B)). *See generally City of Richmond v. Va. United Methodist Homes, Inc.*, 257 Va. 146, 156-57 (1999); *Manassas Lodge*, 218 Va. at 223-24.

exclusively occupied or used by churches or religious bodies for religious worship or for the residences of their ministers." Section 6(a)(6), however, empowered the General Assembly to create an exemption for "religious" and other nonprofit uses broader than that baseline, exempting:

> Property used by its owner for religious, charitable, patriotic, historical, benevolent, cultural, or public park and playground purposes, as may be provided by classification . . . .

Va. Const. art. X, § 6(a)(6).

The power conferred on the General Assembly in Section 6(a)(6) "is exceedingly broad." *Proceedings and Debates of the Virginia House of Delegates Pertaining to Amendment of the Constitution* 354 (1970) (Statement of Del. Morrison). Unlike Section 6(a)(2), which requires that property be used "exclusively" for "religious worship or . . . the residences of . . . ministers," there is no such exclusive-use requirement in Section 6(a)(6). Instead, as the drafters explained, "[t]he qualifying word 'exclusively' may better be replaced by 'primarily' or 'substantially,' depending on the nature and function of the organization proposed to be exempted." *Id.* "[T]he extent of such qualification [is] left for legislative decision." *Id.*[6]

Code § 58.1-3606 recites that it was enacted by the General Assembly under "the authority granted in Article X, Section 6(a)(6) of the Constitution of Virginia to exempt property from taxation by classification." Section 58.1-3606(A)(2) carries forward the exclusive-use language from Article X, Section 6(a)(2), but it permits the exemption to extend to certain "adjacent" or "ancillary and accessory" properties that support the exclusive-use property. It exempts:

> Real property and personal property owned by churches or religious bodies . . . and exclusively occupied or used for religious

---

[6] *See, e.g.*, Code § 58.1-3617 ("Motor vehicles owned or leased by churches and used *predominantly* for church purposes, are hereby classified as property used by its owner for religious purposes." (emphasis added)).

worship or for the residence of the minister of any church or religious body, *and such additional adjacent land reasonably necessary for the convenient use of any such property*. Real property exclusively used for religious worship shall also include the following: (a) property used for outdoor worship activities; (b) *property used for ancillary and accessory purposes* as allowed under the local zoning ordinance, *the dominant purpose of which is to support or augment the principal religious worship use*; and (c) property used as required by federal, state, or local law.

Code § 58.1-3606(A)(2) (emphases added).  For example, a church-owned parking lot used by parishioners to park their cars to attend worship services might qualify as "adjacent land reasonably necessary for the convenient use" of the church, or "property used for ancillary and accessory purposes . . . the dominant purpose of which is to support or augment the principal religious worship use."[7]  A church-owned parking lot could therefore qualify as exempt even though it is not "exclusively occupied or used for religious worship or for the residence of the minister." *Id.*[8]

2. *The Church's failure to satisfy the exclusivity test*

In granting the City's motion to strike, the trial court correctly determined that the Church failed to prove that it used the 214 Grove Avenue property "exclusively" for religious

---

[7] We are aware that the bill summary for the 2014 amendment to Code § 58.1-3606(A)(2), 2014 Va. Acts chs. 555 (H.B. 156), 615 (S.B. 175), states that local commissioners of revenue "have interpreted this provision to exempt, for example, church buildings, as well as attached parking lots."  Dep't of Taxation, 2014 Fiscal Impact Statement, HB 156 (Mar. 28, 2014), https://perma.cc/P9EC-5ZFQ.  The Code makes clear, however, that such summaries do "not constitute a part of the legislation considered, agreed to, or enacted, and shall not be used to indicate or infer legislative intent."  Code § 1-247; *see also* Code § 30-19.03:2 (same).  "Given this unambiguous legislative command, we cannot consider the bill summary in our construction of the statute."  *Davis v. MKR Dev., LLC*, 295 Va. 488, 496 (2018).

[8] Code § 58.1-3606(A)(2) does not provide the only exemption potentially available to churches.  Code § 58.1-3617 exempts the property of "[a]ny church . . . operated exclusively on a nonprofit basis for charitable, religious or educational purposes" when "used exclusively for charitable, religious or educational purposes."  *See, e.g.*, 1989 Op. Va. Att'y Gen. 342, 344; 1984-85 Op. Va. Att'y Gen. 324, 324-25.  Because the Church did not seek exemption under Code § 58.1-3617, however, we do not consider its scope or application here.

worship purposes or for the residence of its minister under Code § 58.1-3606(A)(2). No minister has ever resided on that property. And the property has not been used "exclusively" for worship purposes. We take as true at the motion-to-strike stage that various aspects of the Church's activities at 214 Grove Avenue qualify as "worship," such as conducting Sunday school and youth outreach. Even so, the Church failed to satisfy the exclusivity test. For it is undisputed that the Church has leased much if not most of the property to Wooden Leg, that Wooden Leg operates its commercial business there, and that Wooden Leg's business is unrelated to the Church's religious mission.

The Church offers three reasons why its use of 214 Grove Avenue satisfies the exclusivity requirement in Code § 58.1-3606(A)(2). But we do not find them persuasive.

First, the Church mistakenly relies on the permissive definition of *exclusively* that was used in *City of Richmond v. United Givers Fund of Richmond, Henrico & Chesterfield, Inc.*, 205 Va. 432 (1964), when tax exemptions were liberally construed. *United Givers* said "that the word 'exclusively,' as used in such exemption provisions, 'has never been considered an absolute term.'" *Id*. at 438 (quoting *City of Richmond v. Richmond Mem'l Hosp.*, 202 Va. 86, 91 (1960)). "To come within a provision for the exemption of property used *exclusively* for charitable purposes, an organization must have charity *as its primary,* if not sole, object." *Id.* (emphases added) (quoting 51 Am. Jur. *Taxation* § 601). There might be other purposes, *United Givers* said, but "the controlling factor is the dominant purpose in the use of the property." *Id*. That definition of *exclusively*, however, was based on the "liberal interpretation" of exemption provisions required by the 1902 Constitution. *See id*. at 437; *Manassas Lodge*, 218 Va. at 224 ("Applying the rule of liberal construction . . ., we have said that the word 'exclusively,' as used in tax exemption provisions, 'has never been considered an absolute term.'" (quoting *Richmond Mem'l Hosp.*, 202 Va. at 91)).

But the Supreme Court rejected the liberal interpretation of *exclusively* in

*Westminster-Canterbury of Hampton Roads, Inc. v. City of Virginia Beach*, 238 Va. 493 (1989).

Applying the strict construction required by Article X, Section 6(f) of the current constitution,

*Westminster-Canterbury* held that a charitable organization created after 1971 was not entitled to

a property-tax exemption for charitable organizations under Code § 58.1-3606(A)(5).  *Id.* at 501.

The entity could not show that it was "conducted *exclusively* as a charity or that its property

[was] used *exclusively* for charitable purposes."  *Id*. (emphases added).  *Accord Exclusively*, *The*

*Compact Edition of the Oxford English Dictionary* (1971) ("So as to exclude all except some

particular object, subject, etc.; solely.").  As the Court later confirmed in *Children, Inc.*,

*Westminster-Canterbury* applied a "strict construction of 'exclusively'" compared to the liberal

construction in *United Givers*.  *See Children, Inc*., 251 Va. at 66-67; *see also* 1974-75 Op. Va.

Att'y Gen. 491, 492 ("Because this phrase is strictly construed for present purposes, the

definition accorded the term 'exclusively' in [*United Givers*] is not applicable.  That definition

was based upon a liberal construction of a different exemption provision . . . .").

Second, we reject the Church's argument that the Wooden Leg lease is compatible with

the Church's exclusive use of the 214 Grove Avenue property for worship purposes in that the

Church ultimately uses the rent moneys for Church purposes.  "It is the use to which property is

put, not the use to which profits that are realized from such property are put, that determines

whether the property shall be exempt."  *Mariner's Museum*, 255 Va. at 47.  The Church's

argument, if accepted, would create an exception that would swallow the exclusive-use rule,

enabling any religious entity to lease its land for commercial purposes to generate revenues to

fund its operations.  In such scenarios, however, the religious entity "no longer uses its leased

property," *id.*, "exclusively . . . for religious worship," Code § 58.1-3606(A)(2).  *See generally*

1984-85 Op. Va. Att'y Gen. 323, 323 ("[E]xempt property leased by a church to an individual or

- 10 -

entity for nonexempt purposes is not exempt from taxation."); 1966-67 Op. Va. Att'y Gen. 276 (opining under Section 183 of the 1902 Constitution that land owned by church and leased for rent "would cease to be tax free during the time it is leased").[9]

Finally, the 214 Grove Avenue property is not entitled to the exemption in Code § 58.1-3606(A)(2) for "adjacent land reasonably necessary for the convenient use of any such" exclusive-use property, or for "ancillary and accessory" property "the dominant purpose of which is to support or augment the principal religious worship use." As the Church confirmed at oral argument here, it has never claimed as part of this proceeding that 214 Grove Avenue serves as "adjacent land" or otherwise supports the 236 Grove Avenue property occupied by the Church's worship center. Rather, the Church argues that 214 Grove Avenue is entitled to the exemption as a standalone property, without regard to the worship center next door. As a standalone property, however, 214 Grove Avenue does not meet the terms of Code § 58.1-3606(A)(2) because the property itself is not used "exclusively" for worship or the residence of a minister. Nor may we consider whether the property supports the adjacent 236 Grove Avenue property under Code § 58.1-3606(A)(2) because that argument has not been

_____

[9] Neither party has argued that the City could or should have treated the property at 214 Grove Avenue as divisible for tax purposes, thus taxing the portion leased to Wooden Leg but not the remaining portion used for worship purposes by the Church. Section 183 of the 1902 Constitution was amended in 1928, *see* 1928 Va. Acts ch. 46, at 306-08, to provide that "the general assembly may provide for the partial taxation of property not exclusively used for the purposes herein named." Va. Const. § 183 (1928), *reprinted in 1928 Supplement to the Virginia Code of 1924* 411 (1928); *City of Richmond v. Grand Lodge*, 162 Va. 471, 473-74 (1934) (discussing history of 1928 amendment). But that language was not carried forward in the 1971 Constitution. The effect of that omission is not before us, but we note that Code § 58.1-3603(A) currently provides that "[w]hen a part but not all of any such building or land . . . is a source of revenue or profit, and the remainder of such building or land is used by any organization exempted from taxation pursuant to this chapter for its purposes, only such portion as is a source of profit or revenue shall be liable for taxation." Because no party has briefed the question, however, we do not consider whether Code § 58.1-3603(A) could be applied to property for which an exemption is sought under Article X, Section 6(a)(2) of the Constitution, or under Code § 58.1-3606(A)(2), on the ground that it is owned or used "exclusively" for worship purposes or the residence of a minister.

raised to date, let alone "stated with reasonable certainty at the time of the ruling" below. Rule 5A:18.[10]

    *B. The trial court properly denied the City's claim for attorney fees.*

    The City argued below that it was entitled "as a matter of law" to attorney fees for successfully defending against the bill of review. The City relied on various code provisions in Article 4, Chapter 39, of Title 58.1, governing a "Bill in Equity for Sale of Delinquent Tax Lands." The Church responded that those statutes contemplate the recovery of fees only "through the stage of exercising the owner's right of redemption," not proceedings afterward like defending an appeal or a bill of review.

    "The general rule in this Commonwealth is that, in the absence of a provision in a statute, rule, or contract to the contrary, a trial court may not award attorney[] fees to a party merely on the basis of that party's having prevailed upon an issue or cause." *Tonti v. Akbari*, 262 Va. 681, 685 (2001). "This is the so-called 'American Rule,' and its purpose is to avoid stifling legitimate litigation by the threat of the specter of burdensome expenses being imposed on an unsuccessful party." *Id.*

    In examining whether the provisions in Article 4 governing the sale of delinquent tax lands required an award of attorney fees to the City, we consider the statutory scheme "as a whole." *Dep't of Med. Assistance Servs. v. Beverly Healthcare*, 268 Va. 278, 285 (2004). We examine the statutory text "in its entirety to determine the intent of the General Assembly." *Id.*

---

[10] For the same reason, we do not need to construe the meaning of "dominant purpose" as used in Code § 58.1-3606(A)(2). *See* 2014 Va. Acts chs. 555, 615 (stating in second enactment clause "[t]hat the provision of clause (b) of subdivision 2 of § 58.1-3606 of the Code of Virginia, as amended by this act, concerning the dominant purpose of the use of property is intended to follow the Supreme Court of Virginia's interpretation of Article X, Section 6 of the Constitution of Virginia and § 58.1-3606 of the Code of Virginia in *Virginia Baptist Homes, Inc. v. Botetourt Cnty.*, 276 Va. 656 (2008)").

Having reviewed all of Article 4, we find that the Church has the better of the arguments. Quite simply, there is no provision in that article entitling a locality to attorney fees for work performed *after* the taxpayer has exercised its right of redemption by paying all taxes, costs, and attorney fees then accumulated.

To the contrary, all the provisions addressing attorney fees in Article 4 contemplate fees for work that ends upon the sale of the property to pay the delinquency, or upon the taxpayer's redemption of the property by paying all arrearages then outstanding. Code § 58.1-3965(A) contemplates that a locality may collect delinquent real estate taxes by obtaining a finding from the circuit court that taxes are delinquent and by instituting judicial proceedings to sell the property to pay the delinquency. The officer charged with collecting the taxes must cause a notice to be published, 30 days before commencing any judicial proceedings, listing the real estate to be offered for sale. Code § 58.1-3965(A). The cost of publishing the notice

> shall become a part of the tax and together with all other costs, *including reasonable attorney fees set by the court* and the costs of any title examination conducted in order to comply with the notice requirements imposed by this section, *shall be collected if payment is made by the owner in redemption of the real property* described therein whether or not court proceedings have been initiated.

*Id.* (emphases added).

In 2014, the Attorney General noted one aspect of the limited nature of this fee-shifting provision. *See* 2014 Op. Va. Att'y Gen. 3. He opined that the reference to attorney fees "set by the court" showed that "[t]here is no provision related to judicial sales to collect delinquent taxes that allows for recovery of fees that are not set by the court." *Id.* at 4. So "when property subject to a judicial sale is redeemed by a taxpayer and there is no court order imposing attorney[] fees

for the collection of delinquent taxes, any attorney fees charged to the locality may not be assessed against the taxpayer." *Id*.[11]

Fee shifting under that statute is also limited to attorney fees "accumulated" up until the time the property is redeemed to avert a tax sale:

> The owner of any property listed may redeem it at any time *before the date of the sale* by paying all *accumulated* taxes, penalties, *reasonable attorney fees*, interest and costs thereon, including the pro rata cost of publication hereunder.

Code § 58.1-3965(B) (emphases added). Under the "series-qualifier canon," the term *accumulated* in subsection B modifies the series of nouns that follow, including *reasonable attorney fees*. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series."). In other words, the attorney fees to be paid under Code § 58.1-3965(B) are only those that have "accumulated" "before the date of the sale." That temporal limit on attorney-fee liability is echoed elsewhere in Article 4.[12]

In short, nothing in Article 4 addresses a locality's entitlement to attorney fees incurred in litigation *after* the taxpayer has redeemed the property. Applying the American Rule, therefore,

---

[11] "While it is not binding on this Court, an [o]pinion of the Attorney General is 'entitled to due consideration,'" and that is "particularly so" when, as here, it has remained in place for many years and "the General Assembly . . . has done nothing to change it." *Beck v. Shelton*, 267 Va. 482, 492 (2004) (quoting *Twietmeyer v. City of Hampton*, 255 Va. 387, 393 (1998)). The General Assembly's "failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view." *Id*. (quoting *Browning-Ferris, Inc. v. Commonwealth*, 225 Va. 157, 161-62 (1983)).

[12] Thus, the owner of real estate subject to a notice under Code § 58.1-3965 has "the right to redeem such real estate *prior to the date set for a judicial sale thereof* by paying into court all taxes, penalties and interest due . . . together with all costs including costs of publication and a reasonable attorney fee set by the court." Code § 58.1-3974 (emphasis added); *see also* Code § 58.1-3975(G) (attaching the same requirement to a nonjudicial sale of land for delinquent taxes).

- 14 -

we agree with the Church that Article 4 does not entitle the City to its attorney fees incurred after the Church redeemed the property, including the City's attorney fees for defending the bill of review.

We appreciate the City's argument that denying attorney fees for successfully defending litigation like this makes it more difficult and expensive for localities to collect delinquent taxes. No doubt, that is true. But this Court must determine "legislative intent by what the statute says and not by what we think it should have said." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541-42 (2016) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)). The statutory text here simply fails to support the City's argument for fee-shifting.

We also lack the City's confidence that when a taxpayer redeems its property by paying all sums that have "accumulated" before the time of sale, Code § 58.1-3965(B), the General Assembly silently intended to shift *additional* legal fees to taxpayers who afterward lose an appeal or bill of review that challenges the locality's original assessment. After all, Code § 8.01-271.1 already protects localities against taxpayers who wage baseless or frivolous litigation. *See Nestler v. Scarabelli*, 77 Va. App. 440, 454 (2023) ("[I]f Code § 8.01-271.1 is violated, the trial court must impose sanctions because the statute uses the words 'shall impose.'"). The General Assembly could well have determined that further deterrence was not needed. Indeed, it may have thought that *over*-deterrence could result, "stifling legitimate litigation," *Tonti*, 262 Va. at 685, particularly for charities, non-profits, and churches for which an adverse attorney-fee award might prove financially ruinous.

## CONCLUSION

The trial court correctly found that the Church failed to prove that its property at 214 Grove Avenue was exempt from taxation under Code § 58.1-3606(A)(2). The court also

correctly concluded that the City was not entitled to attorney fees under Article 4, Chapter 39, of Title 58.1, for having to defend the bill of review.

*Affirmed.*